JOHN JONES v. CHARLES H. JONES et al.,
Appellants.

Division One, November 27, 1909.

1. WILL: Dry Trust: Executed by Statute. Where the will devised the fee simple title to a trustee, and then proceeded to invest the use and possession in testator's two sons for a period of twenty years, no control over the land being given to the trustee and no duties in reference thereto being imposed upon him, the devise to him was a dry passive trust, and the Statute of Uses (Sec. 4589, R. S. 1899) executed the trust and invested the title, both legal and equitable, in the two sons, immediately upon the testator's death.

Jones v. Jones.

2. ————: ————: ————: **Rents and Taxes.** But where the will devised the title to certain lots, to a trustee, and imposed on him the duty of collecting sufficient rents to pay all taxes against all the lands devised by the will, and testator's two sons were to have the use and possession subject to the trustee's right in that behalf, the will created a valid active trust, and the Statute of Uses did not execute the trust and did not vest the title in the sons.

3. ————: ————: ————: **Vesting Title Upon Condition in Twenty Years: Condition Subsequent.** The will declared that testator's two sons were wild and dissipated spendthrifts, and vested the fee simple title in a trustee, and then proceeded to give the use and possession of certain described lands to one son and other lands to the other, to each for a period of twenty years, and then provided, by separate clauses, that "if said son shall be capable of a prudent exercise, control and ownership of said real estate, and no further danger shall exist or be apprehended on account of the tendencies I have mentioned, then he shall become seized in fee simple to all of said real estate, with the right of free disposition." If said sons did not reform, they were to have their respective lands for the remainder of their lives, anyhow, but the fee at the end of the twenty years was to vest in their bodily heirs. *Held, first,* that the trust was a dry one and the statute executed it, and vested the title in the sons for life, in any event; *second,* whether the vesting of the fee simple title was postponed for twenty years, and whether or not if postponed it then vested in the sons, was dependent upon a condition subsequent, the reformation of the sons—a fact which could not be determined until the end of the twenty years; *third,* the subsequent condition was void for indefiniteness and uncertainty, because the will did not designate anyone who was to determine whether or not the boys had become "capable of a prudent exercise, control and ownership of said property," and whether or not "no further danger shall exist or be apprehended on account" of their spendthrift tendencies; and, therefore, the will and the statute vested the entire fee simple title in the sons immediately upon the testator's death.

4. ————: **Condition Subsequent: Immoral Habits: Reformation: How Determined.** Where a will gives property to devisees after twenty years upon condition that they abandon their dissipated and immoral habits, but designates neither the executor nor the court nor any one else to determine whether or not they have reformed, the courts have no power to determine the question, and the condition is void for indefiniteness and uncertainty.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

REVERSED AND REMANDED (*with directions*).

*H. M. Ramey, Jr.,* and *Eugene Silverman* for appellants.

(1) The fee to the real estate is placed in John Jones as trustee, but as to the real estate devised in items second and third of the will no power is reposed in him, and no duties imposed on him. He is given a bare legal title, without possession. Being the mere repository of title the statute of uses will execute the trust. R. S. 1899, sec. 4598; Carter v. Long, 181 Mo. 701; Perry on Trusts (5 Ed.), sec. 298. (2) The trust being executed, the estate vests immediately subject to be divested on a non-performance of the condition stated in the will. The condition "if my said son shall be capable of a prudent exercise, control and ownership of said real estate and that no further danger shall exist or be apprehended on account of the tendencies I have enumerated" is a condition subsequent. Paper Co. v. Fisk, 47 Mich. 218; Burnham v. Burnham, 79 Wis. 566; Duddy v. Gresham, 2 L. R. Ir. 442. (3) And being a condition subsequent it will be strictly construed since conditions subsequent are not favored in the law because they tend to destroy estates. 4 Kent 129; Chapin v. School District, 35 N. H. 445. (4) The estate can never be divested because the condition is so indefinite and uncertain as to be void. The trustee is not given the power of determining whether the condition has been fulfilled, nor are the terms definite enough so that the court can adjudge their fulfillment. Bispham on Equity, 65; Schmucker's Estate v. Reel, 61 Mo. 600; Cassem v. Kennedy, 147 Ill. 660; Duddy v. Gresham, 2 L. R. Ir. 442; Clavering v. Ellison, H. L. Cases 707 (11 Reprint 282). (5) Although charitable trusts are favored in

the law, yet if the object of this trust had been of a charitable nature it would nevertheless have to be declared void for uncertainty. White v. Fisk, 22 Conn. 51; Hester v. Hester, 2 Iredell Eq. (N. C.) 330; Trippe v. Frazer, 4 Har. & J. (Md.) 446; Grimes Exrs. v. Harmon, 35 Md. 198; Fontain v. Ravenel, 17 How. 368; Beekman v. Bonson, 23 N. Y. 298; Dashiell v. Atty.-Genl., 5 Har. & J. (Md.) 392. (6) "The courts must declare what intention the testator has expressed with sufficient legal certainty; not the intention which he may have entertained, but which he has failed sufficiently to manifest." Wootton v. Redd, 12 Gratt. 196; Hatcher v. Hatcher, 80 Va. 169; Senger v. Senger, 81 Va. 687; Sutherland v. Sydnor, 6 S. E. 480; Gilmore v. Jenkins, 129 Iowa 686, 6 Am. and Eng. Ann. Cas. 1008. C. H. Jones acquired an estate for twenty years by the will and the remainder by descent, hence they are now the owners of the fee and the court should so declare.

WOODSON, J.—This suit was begun in the circuit court of Buchanan county, asking for a judicial construction of the will of Levi Jones, deceased.

Prior thereto the will had been duly probated by the probate court of that county.

The pleadings, omitting formal parts, are as follows:

"Comes now plaintiff and for cause of action states that Levi Jones departed this life on the — day of — —, 1899, and at the time of his death was a resident of Buchanan county, Missouri, and owned a large amount of real and personal property therein.

"Plaintiff states that on the eleventh day of August, 1898, said Levi Jones made and executed his last will and testament in words and figures as follows, to-wit:

" 'I, Levi Jones, of the county of Buchanan and State of Missouri, being of sound mind and memory

and being fully aware of the uncertainty of life and the certainty of death, I am anxious to dispose of all my property in such way as will, in my judgment, be to the greatest advantage and welfare of my two sons. On account of the tendency on the part of said two sons to become dissipated, wild and spendthrifts, I do not think it advisable to invest them with complete title and ownership of my real estate for a period of twenty years next after my death and then only upon conditions herein set forth, but I give them an estate for years only in said property for said period of twenty years next after my death, placing the fee of said title in trust for said period of time. And if at the expiration of said twenty years the danger above alluded to shall be removed they then become entitled to be vested with the fee simple title to said real estate. If at the expiration of said twenty years, on account of habits of drunkenness, gambling or for any other reason founded solely on immorality they, my said sons, shall be incapacitated to exercise reasonable care, control and management of said real estate, then in that event I do not want them to become or ever to be invested with the title in fee to my said lands, but I wish them to continue in the enjoyment of said lands for and during their natural life; nor until my two sons shall become entitled to be invested with the fee simple title to said lands do I intend that they shall ever sell, mortgage, hypothecate or anticipate in any manner whatsoever their interest or estate in said real estate. And now, therefore, I make, declare and publish the following as my last Will and Testament.

" 'First. I give to my brother, John Jones, of said county, the fee in all of the lands and tenements described herein of which I shall die seized, and located in said county and state, to be held by said John Jones, however, and his successor or successors in this trust, in trust for the uses and benefit of my said two sons and in furtherance of the objects herein set forth.

" 'Second. I give and bequeath to my beloved son, Charles H. Jones, an estate for years for and during the period of twenty years, in the following land: One hundred and sixty acres of land, the same being the northwest quarter of section twenty-six, township fifty-five, range thirty-five; and twenty acres in the south side of the northwest quarter of section twenty-two, township fifty-five, range thirty-five; and eighty acres, the north half of the southwest quarter, section twenty-two, township fifty-five, range thirty-five; also twenty acres, the east half of the southeast quarter of southwest quarter of section twenty-two, township fifty-five, range thirty-five; all in said county and state. And if, after the expiration of said twenty years next after my death, my said son Charles H. Jones shall be capable of a prudent exercise, control and ownership of said real estate and that no further danger shall exist or be apprehended on account of the tendencies I have enumerated, then I will and direct that he become seized in the fee simple title to all of said real estate, with the right of free disposition of said property as he may see fit. If my said son Charles H. Jones, at the expiration of said twenty years shall not become invested with the fee simple title to said real estate on account of the conditions herein made, I then will and direct that he continue in the use, ownership and control of said real estate for the balance of his life in the same manner and form as he owned, occupied and controlled said real estate for said period of twenty years. If my said son Charles H. Jones should die without heirs of his body before my son James Jones, I will that my son James Jones take the property I have herein given my son Charles H. Jones. But my son James Jones is not to have any greater interest or estate in said land than he shall have or may have in the lands and tenements I hereinafter bequeath to him. Should my son Charles H. Jones die and have heirs of his body,

then I will and direct that his said bodily heirs shall become seized with the fee simple title to said lands. I further will and direct that my said son Charles H. Jones shall not sell, mortgage, hypothecate or by any other means anticipate his interest or estate in said land so long as he shall not be invested with the fee simple title to said lands, in other words, I give him said estate in said land and the same are to be held by him not by way of anticipation so long as he shall not be the owner of the fee simple title to said lands under the terms of this will.

" 'Third. I give and bequeath to my beloved son James Jones an estate for years, for and during the period of twenty years, in the following lands; sixty acres of land, the south part of the southwest quarter of section one, township fifty-six, range thirty-six; and thirty acres in the southeast part of the southwest quarter of section one, township fifty-six, range thirty-six; and forty-five and one-half acres, one-half of north side of the southeast quarter of section one, township fifty-six, range thirty-six, and twenty-seven and one-half acres in the northwest quarter of the southwest quarter of section six, township fifty-six, range thirty-five; and twenty acres, the south half of the southeast quarter of the northwest quarter of section twelve, township fifty-six, range thirty-six; and eighty acres, the north one-half of the northeast quarter of section twenty-three, township fifty-six, range thirty-six; all in the county of Buchanan and State of Missouri. And if, after the expiration of said twenty years next after my death, my said son, James Jones shall be capable of a prudent and reasonable exercise, control and management of said real estate, and that no further danger shall exist or be apprehended on account of the tendencies I have enumerated, then I will and direct that he become seized in the fee simple title of all of said real estate, with the right of free disposition of said property as he may see fit. If my

said son James Jones, at the expiration of said twenty years, shall not become invested with the fee simple title to said real estate on account of the conditions herein made, I then will and direct that he continue in the use, ownership and control of said real estate for the balance of his life in the same manner and form as he owned, occupied and controlled said real estate for the said period of twenty years.

" 'If my said son James Jones should die without heirs of body before my son Charles H. Jones, I will that my son Charles H. Jones take the property I have herein given my son James Jones, but my said son Charles H. Jones is not to have any greater interest or estate in said lands than he shall have or may have in the lands and tenements I have here above bequeathed to him. Should my son James Jones die and have heirs of his body, then I will and direct that his said bodily heirs shall become seized with the fee simple title to said lands. I further will and direct that my said son James Jones shall not sell, mortgage, hypothecate or in other words, anticipate his interest or estate in said lands, so long as he shall not be invested with the fee simple title to said lands. In other words, I give him said estate in said lands and the same are to be held by him "not by way of anticipation," for reasons heretofore indicated, so long as he shall not be the owner of the fee simple title of said land, under the terms of this will.

" 'Fourth. I give and bequeath to my two sons, jointly, the following other lots, to be held by them in the same manner and in the same form and to have the same estate in under the same conditions as the other lands I have hereinbefore given them, singly.

" 'Said lots are described as follows; to-wit: Lots two and five, block number one in Egee's Second Addition, an addition to the City of St. Joseph, Missouri, and lots one and two, block number five as shown on the plat of the Town of St. George, located in said

county, filed in the office of the Recorder of Deeds within and for said County of Buchanan. The only additional condition I impose upon their use and ownership of said last described property is this: I will that said trustee or his successor in trust, collect sufficient rent (if it shall yield enough) from said property in said town of St. George and said lots in said Egee's Second Addition to pay the taxes, general and special, upon all the lands I have herein disposed of.

" 'This said trustee shall do only in case my said sons shall fail to pay such taxes.

" 'Fifth. I will that my funeral expenses and all my just debts be paid. And I will that all my personal property remaining after said payments be divided share and share alike, and absolutely, between my said two sons.

" 'Sixth. I will that if my said two sons or either of them shall enter upon a contest, as a party or parties plaintiff, in a suit to contest or destroy the provisions of this will, then in such event such parties or party plaintiff in said proceeding shall, upon the filing of said suit to contest this will, forfeit all right, title and interest in said property which I have given him herein. If one shall only file suit as a party plaintiff, then the other one not engaging in said contest as party plaintiff shall have and receive the full interest bequeathed to said son who shall have entered upon said contest. If both of my said sons shall enter upon said contest, then I will and direct that all of my said real estate shall upon the filing of said suit, to contest this will descend in fee simple to my other heirs at law.

" 'Seventh. There is other real estate not mentioned herein I desire to leave open to be disposed of as I may hereafter wish, or go with my general estate and go to my said two sons, share and share alike, in fee simple.

" 'Eighth. I appoint my said brother John Jones executor of this my last will and testament.' "

Then follows the signature of the testator, and the attesting clause and the signatures of the witnesses.

The petition proceeds:

"Plaintiff states that he is the executor and trustee named in said will, but that he is uncertain as to the true meaning, construction and effect of said will and there is a controversy between himself and the defendants herein, and as between the defendants themselves as to what is the true meaning, construction and legal effect of said will.

"Plaintiff states that the estate of said Levi Jones deceased has been fully wound up; administration has been had thereon and all of the debts of said deceased have been paid.

"Plaintiff states that defendants, Charles H. Jones and James Jones, are sons and the only heirs at law of Levi Jones, deceased; that defendants, Levi D. Jones and Dietta M. Jones, are the children and only children of said Charles H. Jones; that defendants Opal Jones and Archie Jones are the children and only heirs of James Jones.

"Plaintiff states that Charles H. Jones and James Jones claim that the true construction of said will is that they, and each of them, receive a fee simple title in and to the real estate described in the aforesaid will and allotted to them respectively; and that said Charles H. Jones and James Jones claim that they own said real estate free from all conditions set forth or attempted to be set forth in said will, and that they have the right of alienation in and to said real estate.

"Plaintiff states that Levi D. Jones, Dietta Jones, Opal Jones and Archie Jones are minors; that it is his, plaintiff's, opinion that said Charles H. Jones and

James Jones do not have a fee simple title in and to said real estate, and he, plaintiff, contends that the true rule of construction of said will gives to said Charles H. Jones and James Jones an estate for twenty years only in said real estate.

"Plaintiff further contends that the true rule of construction of said will is at the expiration of said twenty years, if said James Jones and Charles H. Jones shall show themselves to be competent to manage said estate and to be sober, industrious and not to be spendthrifts, then and in that event the fee simple title of said estate is in them, but if at the expiration of said time said last two named defendants are incompetent to manage said estate, or become spendthrifts, or drunkards, or are immoral in such manner as to threaten their capacity to manage said property, then and in that event the said two defendants are to receive a life interest only in said property and the children of said two defendants in that event are to receive and become invested with the title to the remainder in the real estate set apart to their respective parents as aforesaid.

"Plaintiff states that it is his contention that he holds said real estate in trust for the period of twenty years, but the said Charles H. Jones and James Jones contend that he does not hold such real estate in trust at this time, and also contend that the conditions set forth and contained in said will relative to the vesting of said estate in themselves in fee were and are void and said last two defendants contend that under the terms of said will and in accordance with the statutes of descent in the State of Missouri, they now own a fee simple title in the said real estate aforesaid.

"Wherefore, the plaintiff prays that the rights of the defendants, and each of them herein, and all the persons under the aforesaid will be judicially determined; that said will be construed and that the title to all of the real estate described in the aforesaid will

be declared, decreed and adjudged, and plaintiff prays for all other and further proper relief."

Thereafter, at the September, 1905, term of said court, a guardian *ad litem* was by the court appointed for the infant defendants. At the January, 1906, term of said court, said guardian *ad litem* and said adult defendants filed answers.

The answer of said guardian *ad litem* is as follows (omitting caption and signature):

"Comes now D. C. Reeves, guardian *ad litem* for Levi D. Jones, Dietta M. Jones, Opal Jones and Archie Jones, minors, heretofore appointed in this cause, and · for answer to plaintiff's petition admits that Levi Jones died in the county of Buchanan as stated in, plaintiff's petition, and at the time of his death owned a large amount of real and personal property therein; that he executed the will set forth in plaintiff's petition.

"Further answering said guardian *ad litem* states that he is not informed as to the true construction of said will and he prays the court to construe said will and protect the rights of said minor children therein, if any they have."

The answer of defendants Charles H. Jones and James Jones is as follows (omitting caption and signatures):

"Come now defendants Charles H. Jones and James Jones and for their answer to plaintiff's petition filed herein, admit that Levi Jones departed this life as stated in plaintiff's petition, and at his death owned a large amount of real and personal property situate in Buchanan county, Missouri. Defendants further admit that on the 11th day of August, 1898, said Levi Jones made and executed his last will and testament which is correctly set forth in plaintiff's petition. · .

"Further answering defendants state that it is true that they are claiming a fee simple title in and

to the real estate described in the aforesaid will under their construction thereof and that they claim to own said real estate free from all conditions set forth or admitted to be set forth in said will, and that they have the right of alienation in and to said real estate.

"Defendants deny each and every other allegation in plaintiff's petition contained.

"Wherefore, defendants pray the court to determine their rights under said will and that the title to all the real estate described in the aforesaid will be declared, decreed and adjudged in defendants in fee simple."

A trial was had at the May term of the court, 1906, and the evidence introduced was as follows:

James Jones was called as a witness in behalf of plaintiff, and having been duly sworn, testified as follows:

### Direct Examination by Mr. Strop.

"Q. State your name? A. James Jones. Q. Where do you reside? A. Down here by the station. Q. Are you a son of Levi Jones? A. Yes, sir. Q. How many brothers and sisters have you? A. One brother.

"Q. What is his name? A. Charles. Q. How many children have you? A. Two. Q. What are their names? A. Archie and Opal. Q. Are they of age? A. No, sir; one is six, the other four. Q. Do you know how many children your brother Charles has? A. He has two. Q. Do you know their names? A. Levi and Dietta. Q. Are they minors? A. Yes, sir.

"The Court: What is your age?

"The Witness: I am 33 in October.

"The Court: What is the age of your wife?

"The Witness: Twenty-nine.

"The Court: She is living?

"The Witness: Yes, sir.

"The Court: What is your brother's age?

"The Witness: He is 35.

"The Court: Married?

"The Witness: Yes, sir.

"The Court: Is his wife living?

"The Witness: Yes, sir.

"The Court: What is her age?

"The Witness: I don't know exactly; about 29, I think.

"The Court: Let the record show that plaintiff introduces in evidence the will of Levi Jones, which is admitted by the parties to be the last will of Levi Jones, and the certificate of probate, which said will is admitted to be the same as set out in full in the petition filed in this cause and for that reason is not reproduced here. The certificate of probate shows that the will was duly admitted to probate in the probate court of Buchanan county; Missouri.

"And thereupon this cause was by the court taken under advisement.

"And thereafter, to-wit, on July 14th, 1906, and during the regular May, 1906, term of said court, the court found in favor of the plaintiff and the following judgment was entered of record in said cause."

Then follows a long decree of the court construing the will as contended for by plaintiff and against the contentions of the adult defendants, from which the latter duly appealed.

## OPINION.

I. The first insistence of counsel for appellants is, that while the will of Levi Jones conveyed the legal title in fee to the real estate therein described to John Jones, the executor, for the use of Charles H. and James Jones, yet as to that portion of the land described in the second and third items thereof no power or authority is reposed in or duties imposed upon him

thereby. In other words, as to the land described in those two paragraphs, he is given a bare legal title without possession, or, in other words, he is a mere repository of the legal title; and that the Statute of Uses has executed the trust.

The statute referred to is section 4589, Revised Statutes 1899, and reads as follows:

"Sec. 4589. Where any person or persons. stand or be seized, or at any time hereafter shall stand or be seized, of and in any lands, tenements or hereditaments, to the use, confidence or trust of any other person or persons, or of any body politic, by reason of any bargain, sale, feoffment, covenant, contract, agreement, will or otherwise, by any manner of means whatsoever, in every such case all and every such person or persons and bodies politic that have, or hereafter shall have, any such use, confidence or trust, in fee simple for term of life or of years, or otherwise, or any use, confidence or trust, in remainder or reversion, shall from thenceforth stand and be seized, deemed and adjudged in lawful seizin, estate and possession of and in the same lands, tenements and hereditaments, with their appurtenances, to all intents, constructions and purposes in law, of and in such like estates, as they had or shall have in use, confidence or trust of or in the same; and that the estate, right, title and possession that was or shall be in such person or persons, that were or hereafter shall be seized of any lands, tenements or hereditaments, to the use, confidence or trust of any such person or persons, or of any body politic, be found henceforth clearly deemed and adjudged to be in him, her or them, that have or hereafter shall have such use, confidence or trust, after such quality, manner, form or condition as they had before in or to the use, confidence or trust that was or shall be in them."

The second and third paragraphs are identical, and for that reason we will only discuss the former,

and what may be said regarding it will apply equally
to the latter.

By reading the second paragraph, it will be ob-
served that the trustee is not mentioned therein, nor
does it confer any power upon or repose any duty
whatever in him regarding the lands therein describ-
ed; nor does any other paragraph of the will confer
any authority upon him regarding the same. No duties
are imposed upon him, except as will be presently stat-
ed, and he is entitled in no event to the use, possession,
income, rents or profits thereof for any purpose either
in trust or otherwise; and, as before stated, he is
the recipient of the bare legal title. The only duty
the will imposes upon the trustee regarding this land
is found stated in paragraph four thereof. It, in sub-
stance, directs the trustee to collect sufficient rents
from the property described therein and to pay all
taxes, general and special, levied against all the lands
disposed of by the will, including those mentioned in
paragraphs two and three; only in case, however, that
Charles H. and James Jones failed to do so.

The direction given to the trustee by the fourth
paragraph to pay the taxes on the farm lands, out
of the rents of the city property, in case the sons of
the testator failed to do so, does not convert the pas-
sive dry trust as to those lands into a live active trust.
There is no necessity for the trustee to hold the legal
title to said lands in order to pay the taxes thereon,
and the failure of the sons to pay them gives the
trustee no authority whatever over the same. The
taxes can be paid by an agent or a stranger as well
as by a trustee or the owner of the lands. Consequent-
ly, the performance of that duty requires neither the
possession nor an interest in the land. For instance
(as was said by counsel for appellant), "if the town
lots had been devised to a different person than the
trustee named in the first item of the will, such other
trustee would have been fully able to perform his

duties, although he had no connection with the farm lands.''

The law applicable to this state of facts is aptly stated by Mr. Perry in his excellent work on Trusts (5 Ed., vol. 1, sec. 298), as follows:

''It may happen that although words of express trust are used in the grant or bequest of an estate to a trustee, yet no estate vests or remains in the trustee. This may be because only a power is given and no estate, as where a testator simply directs his executor to sell certain property and apply the proceeds to certain purposes instead of granting the property to the executor or trustee to sell, etc., or because the Statute of Uses executes the legal estate at once in the *cestui que trust*. Thus, if A. grants or bequeaths land to B. and his heirs, in trust for C. and his heirs, the trustee, B., will take nothing in the land, but the legal title, as well as the beneficial use, will vest immediately in C.; for the Statute of Uses, so called, executes the possession and the legal title in the same person to whom the beneficial interest is given. As stated in previous sections, a large part of the land in England was at one time held to uses. The legal title was in one person, but upon the trust and confidence that such person would apply it to the use of some person named, or that such legal owner would permit some other person to have the possession, use, and income of the estate. This system, originating partly in fraud of the law, and partly in the necessities and conveniences of the subject, became at last the source of great abuses. To remedy these abuses, the Statute of Uses was enacted. This statute executes the use by conveying the possession to the use, and transferring the use into possession, thereby making the *cestui que use* complete owner of the estate, as well at law as in equity. It does not abolish the conveyance to uses, but only annihilates the intervening estate, and turns the interest of the *cestui que use* into a legal

instead of an equitable estate. A use, a trust, and a confidence is one and the same thing, and if an estate is conveyed to one person for the use of, or upon a trust for, another, and nothing more is said, the statute immediately transfers the legal estate to the use, and no trust is created, although express words of trust are used. So absolute is the statute that it will operate upon all conveyances in the words above stated, although it was the plain intention of the settlor that the estate should vest and remain in the first donee; for the intention of the citizen cannot control express enactments of the Legislature, or positive rules of property."

And in the case of Carter v. Long, 181 Mo. l. c. 710, this court in discussing this statute said: "But no active executory trust was created by this devise, and under the Statute of Uses, the nominal or dry trust created by the words used therein was executed as soon as the will went into effect, i. e., at the death of the testator, and in legal effect the devise was the same as if made direct to the children. [R. S. 1899, sec. 4589; 1 Perry on Trusts (5 Ed.), sec. 298, and cases cited in brief of counsel for D. E.]"

The same is true of the case at bar in so far as the lands described in the second and third paragraphs of the will are concerned. The trust as to those lands imposed upon the trustee was a dry passive trust and the Statute of Uses, before mentioned, executed the same, and thereby placed both the legal and equitable interests in Charles H. and James Jones, the sons of the testator.

Counsel for appellants concede that the situation is different as to the city lots devised by the fourth paragraph, for there the trustee is directed to collect the rents, pay taxes, etc. So we are, therefore, of the opinion that as to those lots the will created a valid active trust for the term of at least twenty years.

This branch of the case will, however, receive further consideration later.

II.   This brings us to the consideration of the conditions stated in the second and third paragraphs of the will.   Those clauses, as before stated, are practically the same; and the former reads as follows:

"I give and bequeath to my beloved son Charles H. Jones an estate for years for and during the period of twenty years in the following land (describing it): And if after the expiration of said twenty years next after my death my said son  Charles H. Jones shall be capable of a prudent exercise, control and ownership of said real estate and that no further danger shall exist or be apprehended on account of the tendencies I have enumerated, then I will and direct that he become seized in fee simple title to all of said real estate, with the right of free disposition of said property as he may see fit.   If my said son Charles H. Jones at the expiration of said twenty years shall not become invested with the fee simple title to said real estate on account of the conditions herein made, I then will and direct that he continue in the use, ownership and control of said real estate for the balance of his life in the same manner and form as he owned, occupied and controlled said real estate for said period of twenty years. . . .   Should my son Charles H. Jones die and have heirs of his body then I will and direct that his said bodily heirs shall become seized with the fee simple title to said lands."   (Then follow statements declaring the trust a spendthrift trust.)

Having determined that the trust as to the land described in the second and third clauses of the will for the twenty years therein mentioned was executed by the Statute of Uses, and that Charles H. and James Jones thereafter held both the legal and equitable interest in the same for that period, it now becomes our duty to ascertain and determine what becomes of the title thereto after the expiration of that period.

It is a general principle of law, too well established to need the citation of authorities to support it, that the law favors the speedy vesting of estates, and where there is reasonable doubt as to the time an estate is to vest, the doubt should be resolved in favor of the earliest possible date when it can vest.

But returning to the conditions upon which these remainders depend, the question here is, is that condition precedent or subsequent? If the former, then the estate in remainder, after the expiration of the twenty years, will not vest until the condition is fully performed, even though the condition be impossible of performance or void for uncertainty. But, upon the contrary, if the condition is subsequent in character, then the estate will vest immediately, subject, however, to be enlarged or destroyed according to the terms of condition. If the condition be of the former character, then the title must remain in abeyance until the expiration of twenty years, for the reason that it cannot be ascertained until that time whether the sons of the testator are to receive the fee or whether their children will be entitled to it, under the provisions of the will.

There is one thing apparent, and about which there can be no doubt, and that is, the second and third clauses of the will give a present vested estate in and to the lands therein described to Charles H. and James Jones for a period of twenty years, from and after the death of the testator. It is also equally certain that the will does not provide for a forfeiture of the estates devised to them. The second and third clauses provide, however, that, if after the expiration of said twenty years, said Charles H. and James Jones, "shall be capable of a prudent exercise, control and ownership of said real estate, and that no further danger shall exist or be apprehended on account of the tendencies I have mentioned, then I will and direct that he [they] become seized in the fee simple title

to all of said real estate with the right of free disposition of said property as he [they] may see fit." In other words, each of their estates is to be enlarged from an estate for twenty years to one in fee, provided, at the expiration of said twenty years, he is "capable of a prudent exercise, control and ownership of said real estate, and that no further danger shall exist or be apprehended on account of the tendencies enumerated."

Said clauses further provide that, "If my said sons . . . at the expiration of said twenty years shall not become invested with the fee simple title to said real estate on account of the conditions herein made, I then will and direct that they continue in the use, ownership and control of said real estate for the balance of their lives in the same manner and form as they owned, occupied and controlled said real estate for said period of twenty years." (In this quotation I have quoted it as if it applied to both Charles H. and James Jones.) Then follows a provision for each of their children after their deaths.

The plain meaning and common sense of this will is, the testator wanted to and endeavored to give to his sons, Charles H. and James Jones, the lands described in the second and third paragraphs thereof for a period of twenty years, with the right to the present use and occupation thereof; and at the expiration of that time if it could be shown they were capable of managing and cultivating the farms in a good and husbandman like manner, and that they had reformed and become sober and respectable citizens of good moral character, then their estates were to be enlarged into a fee, with full power on their part of alienation; but if, at the expiration of the twenty-year term, they were not capable of so managing and cultivating said lands, or had not settled down and become sober men and respectable citizens, then, nevertheless, their estates in said lands were to be increased to life estates

instead of estates in fee, which would have been the case had they reformed, etc., and they were to hold and enjoy the life estates just as they had been holding and enjoying the estates for years, and upon their demise the remainders were to go to their children.

From this view of the case it is perfectly obvious that the estates of Charles H. and James Jones in and to these lands vested in them immediately upon the death of the testator, and under no circumstances, according to the terms of the will, can they be divested as long as they live; and if they perform the conditions as to the management of said lands and become good citizens, then the estates devised to them will remain vested in them in fee. That being true, said condition must be held to be subsequent in character, for the reason that the title vested before the condition was or could be performed; and if it is performed, or should the condition be held to be void, the estates will remain vested in them, but enlarged, however, into estates in fee; but, as before stated, can never be divested under any contingency prior to their deaths.

The same views were expressed about a similar will by the Supreme Court of Wisconsin, in the case of Burnham v. Burnham, 79 Wis. 557. The provisions of the will in that case were, "Now, therefore, I declare that my will is that my said son Daniel G. Burnham shall not have or receive any part of my estate unless within five years after my decease he shall have reformed and become a sober and respectable citizen of good moral character, of which my executors shall be the sole judge at that time," and, further, "I hereby order and direct that my executors shall hold and retain the share of my estate devised and bequeathed to my said son Daniel G. Burnham in trust, to be disposed of and paid over as herein provided, to-wit:" (Declaring that it should be held for five years to await reformation of son). In holding the condition in that will to be subsequent in character, the court,

on pages 564 to 566, said: "Subject to the provisions in favor of the widow, the testator by the original will gave, devised and bequeathed the undivided one-fourth part of his estate to his son, Daniel G., with the proviso to the effect that, if he did not survive his mother, then such of his issue as should be living at the time of her death should inherit the share of the testator's property that would otherwise have become Daniel G.'s. Without that provision, the law would, in that event, undoubtedly have given Daniel G.'s share to his children. [Sec. 2289, R. S.] The intemperate and extravagant habits of Daniel G. were such as to induce his father, as an act of prudence, to make the codicil. The manifest purpose of the codicil was to preserve Daniel G.'s share of the estate for and to secure the same to his children in the event that he should not reform and become a sober and respectable citizen of good moral character within the time therein specified. In case he should so reform within five years after the death of his father, then the testator gave, devised and bequeathed to him, and the executors were thereby ordered to pay over to him, one-half of the property and estate so bequeathed to him by the original will; and if he continued so reformed for the further period of five years, then they were ordered and directed to pay over to him the other half of said devise and bequest, as in the original will provided; subject, however, to the conditions and limitations contained in the codicil. In so far as the codicil in form gave, devised and bequeathed such share of the estate to Daniel G., it was merely confirmatory of the grant and bequest in the original will, and did not necessarily postpone the vesting of the equitable right to the gifts until the expiration of the time therein specified. Unless he so reformed he was not to have or receive any part, parcel, or interest in or to his father's estate, but the executors were ordered and directed to hold and retain the share so devised and

bequeathed to him 'in trust, to be disposed of and paid over as' provided in the codicil—that is to say, paid out for the education and support of the children of Daniel G.; and finally distributed as and at the times therein prescribed; provided, that until the death of said Daniel G. they retain in their hands sufficient of said estate, not exceeding $350 per year, to comfortably board and support him. It will be observed that the codicil did not in any way divert any part of Daniel G.'s share of the estate from the line of descent where it would have gone under the statute had no codicil been made, and Daniel G. had preserved the same and not disposed of it by will or otherwise. In other words, the testator did not by his codicil undertake to, immediately upon his death, disinherit Daniel G., but only in case he should first demonstrate his incapacity for taking care of his share of the estate by not reforming as and within the period specified. For the purpose of preventing his share of the estate from being squandered by him, therefore, the testator by his codicil withheld the possession and control of the same from him until he should first demonstrate his capacity or incapacity for taking care of it. But the withholding of such possession and control did not prevent his right to his share of the estate from vesting in him immediately on the death of his father, subject, however, to the conditions named in the codicil. [Millard's Appeal, 87 Pa. St. 457.]''

And in the case of the Rock River Paper Co. v. Fisk, 47 Mich. 212, the same question was presented. The clause of the will there under consideration was as follows: ''I give and bequeath to my beloved son, Francis M. Sibley, when he arrives at the age of twenty-one years, three thousand dollars, and one thousand dollars annually thereafter until he arrives at the age of twenty-five years, and if at that time he shall have used what he has received, in a judicious, frugal manner, and not wasted and squandered it (in

the opinion of my executors, hereunto appointed), he shall then receive ten thousand dollars more.'' After passing upon several other questions not material here, the court, on page 220, in speaking through Judge COOLEY, said: ''No trust was therefore created by this will, and the legal title was left to descend according to the rules of law. The law passed it to the son Francis, and there it must have remained until by some subsequent act or event it was passed from him. If there is anything in the will to indicate that the testator had in his mind a different thought, it is the clause that 'if at the age of thirty-five years or sooner, if in the opinion of said executors he shall have and will still continue to use what he has received, as before stated, in a frugal, economical and judicious manner, he shall come into full possession of all my estate, personal and real, not otherwise disposed of by this will or otherwise.' But the words employed here are perfectly consistent with the supposition that the title was in the son, but that he was for the time excluded from the enjoyment and possession.'' The same will was again before that court in the case of Perrin v. Lepper, 72 Mich. 486, and that court again held that the entire estate vested *in praesenti* in the son, subject to the rights and interests of the widow, and that the provision of the will before quoted only excluded him from the possession, use and enjoyment thereof until the condition was performed.

Having reached the conclusions that the estates devised to Charles H. and James Jones, by the second and third paragraphs of the will, vested in them upon the death of their father, the testator, and that the Statute of Uses executed the trust as to the same in them, we are now brought to the consideration of the question, are the conditions stated in those paragraphs valid or invalid? Counsel for appellants deny their validity. If valid, their estates in the farm lands cannot be enlarged into a fee without it is established

at the expiration of the twenty year period that they have reformed and have become respectable citizens of good moral character, and are capable of conducting and managing said farms in a prudent and in a husbandman like manner. If, however, upon the other hand, said conditions are invalid, then the will in legal effect devised the fee to said lands to appellants as absolute in character as if said conditions had not been embraced in or attached to said bequests.

As before stated, counsel for appellants insist that said conditions are invalid for being too indefinite and uncertain, for the reason assigned, that the conditions are that the appellants "shall be capable of a prudent exercise, control and ownership," and "that no further danger shall exist or be apprehended on account of the tendencies I have enumerated."

Under the light of those provisions, who is to judge of the performance or non-performance of those conditions. The testator has designated no such person in his will; and I know of no law which authorizes the court to judge what is and what is not proper and necessary capacity for these two young men to possess in order to be properly intrusted with the management and control of the farms described in the will; or to determine the question as to whether they have reformed as to their drinking habits, and that there is no further danger to be apprehended in that regard. There is no rule or test by which those matters can be determined. The language of those conditions calls for actual knowledge of the capabilities of the appellants, and not what might be expected of them at the time of the expiration of said twenty years, but they must actually have sufficient capability to enable them to *"prudently exercise control and ownership"* *over the property,* before it would be possible to perform said conditions. If that question had been left

to the judgment of the court, or to the trustee named in the will, quite another question would be presented for determination, but no such provision is to be found therein.

Again, the second part of the condition is "that no further danger shall exist or be apprehended." Who can determine that question? Not the trustee, for the will gives him no such power; nor the courts, for neither the will nor the nature of the condition will permit them to do so. If the will had authorized the executor to decide when the conditions had been performed, the conditions would thereby have been susceptible of being made definite and certain, because in that case the decision of the executors would have been made the test, and that which before was uncertain would thereby have been made certain. But in the case at bar neither he nor any one else has been so empowered. And in the absence of any such authority, if the court should undertake to determine those matters according to its individual opinion or ideas, then it would thereby substitute its judgment for the will of the testator. Under the law that cannot be done. Courts have no authority to make wills for other people; the extent of their authority is limited to the interpretation and construction of wills made by others, and they have no power to piece out, take from or modify the wills of others so as to make them conform to the individual opinion of the court or the judge thereof.

These views are well supported by an abundance of authority.

Mr. Bispham in his work on Equity, sec. 65, says: "Three things, it is said, must concur to raise a trust; sufficient words to create it; a definite subject and a certain or ascertained object, and to these requisites may be added another, viz., that the terms of the trust should be sufficiently declared."

And as said in Schmucker's Estate v. Reel. 61

Mo. 1. c. 600: "In every will creating legacies or trusts, there should be such certainty as will enable the court to carry them out. Where such uncertainty exists that the court cannot see what object the testator had in view, or for what he intended to provide, then the legacy or trust must fail."

In Cassem v. Kennedy, 147 Ill. 660, the will declared: "As my son, Joseph Downey, is wild, unsettled and irregular in his habits, it is my will and desire that he shall not enjoy the benefit of this devise till he settles down in life and gets married, or until he arrives at the age of forty years." It was held that the condition is not void for uncertainty because the fact whether he is married or has arrived at the age of forty years can be easily determined. The court says: "Had the conditions stopped with the words, 'till he settles down in life,' it might have been said the event was not capable of definite ascertainment—that is to say, there might be a difference of opinion as to whether a man had 'settled down in life.' "

In the case of Duddy v. Gresham, 2 L. R. Ir. 442, the condition was held to be subsequent and void for uncertainty.

I have been unable to find that report in the library, and for that reason I am unable to state the condition which was involved in that case, yet, from a quotation therefrom, I judge it was similar in effect to the one under consideration.

DEASY, L. J., in deciding that case, said:

"I think it is plain that it is a devise subject to a condition subsequent for a part of it is that she shall not marry, the compliance with which could not be ascertained until her death.

"Now, the rule of law applicable to conditions subsequent divesting an estate is that they are to be construed strictly. . . . In some of the older authorities the expression is used, that such limita-

tions are 'odious to the law.' . . . If such be a clear rule, it appears to me an equally clear principle that the contingency on which such a limitation is to take effect, should be something definite and certain; that the contingency should be so expressed as not to leave it in any degree doubtful or uncertain what the contingency is which is intended to defeat the prior estate. . . .

"Now, applying that principle of construction to the present case, is the devise here so framed as, in the language of Lord CAMPBELL, to show a breach of a definite line of conduct which the widow must reasonably have known would work a forfeiture or, in the language of Lord CRANWORTH, is it such 'that the court can see from the beginning, precisely and distinctly, upon the happening of what event,' the vested estate of the widow was to determine?"

After discussion of the views of the various justices, he proceeds: "I think, therefore, that this condition is not expressed with sufficient clearness to defeat the vested estate which the widow took, and transfer it to the heir of the testator, who claims it in this ejectment. I think it does not point out, with sufficient clearness, what it was she was to do or refrain from doing, beyond abstaining from marrying, in order to entitle her to retain the estate."

In Clavering v. Ellison, 7 H. L. Cas. 707 (11 Reprint 282), the condition was that devise was to cease if "one or more of the children shall be educated abroad, or not in the Protestant religion."

Lord CRANWORTH says: "One of the cardinal rules on the subject has been this: that where a vested estate is to be defeated by a condition on a contingency that is to happen afterwards, that condition must be such that the court can see from the beginning, precisely and distinctly, upon the happening of what event it was that the preceding vested estate was to determine.

"In my opinion, if there was no direct authority

for it, I should still have arrived at the same conclusion; but I have looked at the authorities, especially that of Lord ELDON, in the case of Fillingham v. Bromley (Turner and Russ. 530). I think that, looking at the language here used, it is far too indefinite and uncertain to enable the court to say what it was that the testator meant should be the event on which the estate was to determine. It was to go over in case one or more of such children should be educated abroad. What does that mean? No two minds would agree upon the question when education begins. Suppose the child was born abroad, and he was brought over to England before he could speak, of course you could not say that he had been educated abroad, though it is said that more ideas are taken in during the first two years of life than in all the years afterwards of the very longest life. If that would not have been a breach of the condition, would it be a breach if the child came back at the age of seven, or if he came back at the age of ten? If he remained abroad all his minority, you would certainly say in that case that he was educated abroad. But the question is, not whether in the particular case he was educated abroad, but whether you can predicate on reading the will, what it was that was to defeat the vested estate."

And in the case of Burnham v. Burnham, supra, the court, on page 566, in discussing this question, said: "The rule of law is well settled, and in fact elementary, that, 'if a condition subsequent be possible at the time of making it, and becomes afterwards impossible to be complied with, either by the act of God, or of the law, or of the grantor; or if it be impossible at the time of making it, or against law— the estate of the grantee, being once vested, is not thereby divested, but becomes absolute.' 4 Kent's Comm. 130; Coke, Litt. 206a; 2 Bl. Comm. 156; 2 Jarm. Wills, 521; Davis v. Gray, 16 Wall. 230; Culin's Appeal, 20 Pa. St. 243; Merrill v. Emery, 10 Pick. 507;

Parker v. Parker, 123 Mass. 584; Morse v. Hayden, 82 Me. 227; Merriam v. Wolcott, 61 How. Pr. 377; Jones , v. Bramblet, 1 Scam. 276; Jordan v. Dunn, 13 Ont. 267. The case at bar is clearly within the rule stated. The result is that, the right to the estate in question having become vested in Daniel G., the same was not divested by reason of his death prior to the expiration of the time in which he was required .to reform, but upon his death descended to his children and widow, as prescribed by the statutes in case of intestate estates.''

The authorities cited in the last case fully support the rule there announced by the court.

We are, therefore, of the opinion that the conditions attached to the lands devised in the second and third clauses of the will are so indefinite and uncertain in their character and meaning as to render them impossible of performance, and for that reason we hold them to be invalid and of no force or effect whatever. Consequently, we also hold that an absolute fee to said lands was by the will in question given to Charles H. and James Jones, as contended for by their counsel.

And since the trust, heretofore mentioned, impressed upon the city property, described in the fourth paragraph of the will, depends upon exactly the same condition which affected the farm property, described in the second and third paragraphs, after the expiration of the twenty year term, we must likewise hold that, after that expiration of said twenty year term, said city property will be discharged of said trust, and from thenceforward Charles H. and James Jones will be the absolute owners in fee; but during said term said city property is subject to the trust declared in said fourth paragraph of the will.

For the reasons before stated, the decree is reversed and the cause remanded with directions to the circuit court to enter a decree in conformity to the

views herein expressed, and as prayed for by appellants in their answer.

All concur.