NANNIE J. NORTHCUTT and EVA L. EAGER v. WILLIE MAE McALLISTER, ELIZABETH L. PROCTOR, FRANCES D. PATTERSON, W. C. SUTTON, T. F. SUTTON and VIRGIE SUTTON, Appellants.

Division One, March 5, 1923.

1. **WILL: Construction: The Word If: Implies a Contingency.** Where the will devises land to certain grandchildren and then adds "if either of these children die, the surviving ones to have it," the word "if" introduces an idea of contingency. It does not express

a contingency if construed to mean the death of a devisee at any time, for death is certain; it must, therefore, mean the death of a devisee prior to testator's death.

2. ———: ———: **Devise to Children in Event of Survivorship.** A devise to three grandchildren, George, Burilla and Mary, of a certain tract of real estate, with the added words, "if either of these children die, the surviving ones to have it, and if all die then my other heirs to have it " was a devise to such of said grandchildren as survived the testator, and expressed as the only contingency upon which either was not to take that he or she predeceased him; and as all three survived him, they took the fee as tenants in common; and upon George's death without issue, leaving Mary and Burilla him surviving, they took his devised interest by inheritance, the "other heirs" of testator being excluded by the will.

3. ———: ———: ———: **Remainder.** Said will did not create a life estate in the three grandchildren with survivorship and a vested remainder in testator's other heirs, or a life estate with survivorship contingent upon the death of either without issue and with remainder over to testator's other heirs.

4. ———: ———: **Extrinsic Evidence.** Extrinsic evidence is not admissible to explain or alter unambiguous and clear expressions in a will. Where the will devised certain real estate to three grandchildren and provided that "if either of these children die, the surviving ones to have it, and if all die then any other heirs to have it," and this same contingency is expressed elsewhere in the will in devises to a certain child of other lands, and in a devise to other grandchildren of other property, the rule that the words "if either of these children die" meant their death prior to testator's death is not to be held inapplicable by evidence that the testator was very old, the three grandchildren were quite young and the testator could not therefore have supposed that they would predecease him. The only contingency that can be given to the words "if either of these children" die is that they predecease the testator; and in the absence of other expressions in the will making that construction doubtful, extrinsic evidence to show it inapplicable is not admissible.

5. ———: ———: **Substitution of Words: When for If.** A substitution of a word in the will cannot be made upon a mere conjecture that testator meant something other than he said. If there is no obscurity in the phrases or words used in the will substitution of others for them cannot be made. The meaning of the words "if either of these children die," unrestricted by an expressed or implied limitation, is not obscure, and the word "when" cannot be substituted for the word "if"; particularly so when a construction that the phrase means the death of one of the children prior to

testator's death brings it into harmony with other clauses of the will and makes it consistent throughout.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED (*with directions*).

*McBaine & Clark* for appellants.

(1)   Death is not a contingency, but, on the contrary, it is a certainty.  So a gift by will to A and a disposition to others "if" the first devisee die, refers not to an event which is certain to occur but to a contingent or uncertain event.  No time being fixed the gift over will take effect only if A shall die before the testator dies.   40 Cyc. 1401-2; 28 Ruling Case Law, p. 225; Real Estate Co. v. Megaree, 280 Mo. 41; Howard v. Howard, 148 S. W. 993; Henderson v. Calhoun, 183 S. W. 584; Dameron v. Lanyon, 234 Mo. 641; Travers v. Reinhardt, 205 U. S. 423; Nations v. Colonial Co., 76 So. (Miss.), 642; Fifer v. Allen, 228 Ill. 509; Karsten v. Karsten, 254 Ill. 480; 30 Am. & Eng. Ency. Law (2 Ed.)  708; 1 Underhill on Wills, 342, sec. 457; Britton v. Thompson, 112 U. S. 532; McClellan v. MacKenzie, 126 Fed. 705; Vanderzee v. Slingerland, 103 N. Y..47; Mitchell v. Pittsburgh Co., 165 Pa. St. 645; Crossman v. Field, 119 Mass. 170; Briggs v. Shaw, 9 Allen (Mass.) 516; 2 Jarman on Wills (6 Ed.) p. 2144; 2 Woerner on Administration (2 Ed.) p. 905.   (2)   Substitution of words not used for words used in a will upon a conjecture or hypothesis is never permitted unless the will as written is ambiguous or there exists a necessity in order to make the writing rational.  Plain language cannot be varied by extrinsic circumstances.  Roberts v. Crain, 173 Mo. 572; Graham v. Graham, 23 W. Va. 36, 48 Am. Rep. 364; 2 Woerner's Adm. (2 Ed.) p. 892; 40 Cyc. 1427-28 ; 28 Ruling Case Law, 269-70; Callaway v. Callaway, 171 Ky. 366; Wright v. Deem, 10 Wheat. 204, 6 L. Ed. 303; Schapiro v. Howard, 113 Md. 78, 140 Am. St. 414; Jackson v. Alsop,

67 Conn. 249; Gilmore v. Jenkins, 127 Ia. 686; 1 Underhill on Wills, p. 498. (3) The meaning of this will has formerly been determined in the case of Conley v. Northcutt, Eager and Mary Sutton, an action to try title. The parties and the will were before the court in that suit in which the court held plaintiffs here took no interest by virtue of item 4 of the Pettus will, but that the words "if either of these children die," etc., meant to dispose of the property in the event of their death before the death of the testator. 2 Black on Judgments (2 Ed.) pp. 764-65; 23 Cyc. 1215; Choteau v. Gibson, 76 Mo. 38; Summit v. Real Estate Co., 208 Mo. 501; Hutchinson v. Patterson, 226 Mo. 174; Cantwell v. Johnson, 236 Mo. 575; Carthage ex rel. v. Weisner, 116 Mo. App. 119; Feine v. Kirchoff, 176 Mo. 516; Fischer v. Dent, 259 Mo. 86; Nave v. Adams, 107 Mo. 419; 15 Ruling Case Law, 1014; Louis v. Brown Township, 109 U. S. 162; Leavitt v. Wolcott, 95 N. Y. 219; Devin v. City of Ottumwa, 53 Iowa, 461; Bangert v. Blades, 117 N. C. 221; Oklahoma v. Texas (U. S.), 65 Law. Ed. 475; Buckner v. Buckner, 210 S. W. 887.

*Harris & Price, Jas. C. Gillespy* and *Jas. E. Boggs* for respondent.

(1) The findings of the trial court sitting as a jury are binding on appeal and will not be disturbed on appeal unless there is no substantial evidence to support them. De Lassus v. Faherty, 164 Mo. 361; First Natl. Bk. v. Wilson, 222 S. W. 381; Mooneyham v. Mynatt, 222 S. W. 451. (2) Appellants submitted the issue as to testator's intention to the court for determination without demurrer to the evidence, without asking for any declarations of law, and without objection to the introduction of extraneous evidence; they are bound by this theory on appeal and cannot complain that the findings are unsupported by the evidence, or that the evidence was inadmissible, or that any particular declaration of law should have been given. Kenefick-Hammond Co. v.

Norwick Ins. Soc., 205 Mo. 312; Jennings v. Cooper, 230 S. W. 325; Boone Co. Lbr. Co. v. Niedermeyer, 187 Mo. App. 180; Felty v. Dunlap, 203 S. W. 651.   (3)   The use of the conditional "if" in connection with death, a certain event bound to happen sometime as in the expression "if all die," implies an unexpressed condition or contingency upon which the death is contemplated to happen or means "when all die;" the expression is therefor ambiguous and indefinite on its face and when occurring in a will must be interpreted so as to effectuate the true intention of the testator, and the intention of the testator is to be ascertained from the whole will and the circumstances attending its execution.   In other words the construing court must put itself in the testator's shoes and look with his eyes.   Stewart v. Jones, 219 Mo. 639; Simmons v. Cabanne, 177 Mo. 351.   (4)   In the light of the testator's true intention all presumptions take flight and technical rules give way for the testator's intention is the controlling factor.   Underhill on Wills, sec. 348; Simmons v. Cabanne, 177 Mo. 353.   (5)   Words used in a will are to be construed in the sense which will effectuate the testator's intention and therefore they may mean one thing in one will and have a different meaning in another whence it follows that every will is a law unto itself and precedent is of scant value in interpreting ambiguous provisions.   Watson v. Watson, 110 Mo. 164; Brown v. Tuschoff, 235 Mo. 456; Meiners v. Meiners, 179 Mo. 614; Willard v. Darrah, 168 Mo. 660; Nichols v. Boswell, 103 Mo. 151.   (6)   Estoppel may be raised only between those who were adverse parties in the former suit, so that the judgment in such former suit settles nothing as to the relative rights or liabilities of the co-plaintiff or co-defendant *inter sese.*   23 Cyc. 1279; City of Springfield v. Woodruff Realty Co., 175 Mo. App. 246; Nevins v. Coleman, 200 S. W. 445.   (7)   The judgment in the case of Conley v. Northcutt et al., rendered in the Circuit Court of Cooper County, January 26, 1905, is not available to appellants as a defense, for the reason it is not *res adjudicata;* the defendants therein, Eager and

Northcutt, not having at the time said judgment was rendered, any right which could have been enforced at that time. 23 Cyc. 1173; Scott v. Black, 96 Mo. App. 472.

JAMES T. BLAIR, J.—This is an appeal from the Boone Circuit Court, on change of venue, in a suit to quiet title and for partition of eighty acres of land in Cooper County. The construction of the will of Stephen D. Pettus, who is the common source of title, and a plea of *res adjudicata* give rise to the questions in the case. Respondents Nannie J. Northcutt and Eva L. Eager are, respectively, daughter and grand-daughter of Stephen D. Pettus. Appellants Willie Mae McAllister, Elizabeth L. Proctor and Frances D. Patterson are sisters and great grand-daughters of Stephens D. Pettus. The appellants Sutton are half-brothers and half-sister of the first named appellants.

On the trial it was stipulated that in 1874 Stephen D. Pettus owned 200 acres of Cooper County land, which included the tract in suit; that in 1874 and a short time before his death, Stephen D. Pettus, then very old but of sound mind, executed his will which, so far as is now material, is as follows:

"Second. I give unto my daughter, Nannie J. McBaine, my bottom farm, that lays in Boone County [describing it particularly], she to have the said farm during her natural life, and then said farm to her daughter, Fannie B. Connelly, and if she should die without children then to my other heirs.

"Third. I give unto my two grandchildren, Ebbe and Ida Pettus, one note I hold on Wm. H. Belcher for $5,000; if either of these children die, then the surviving to have all, and if both die to my other heirs. I also give these two children last named, all my money and other property that is left, after my grandson, George Sutton, gets one thousand dollars; also my bed and bureau.

"Fourth. I give unto my grandson, George Sutton (named above) one thousand dollars, and I give unto my grandchildren, George, Burilla and Mary Sutton, the fol-

lowing described tract of land [here follows description]. being 200 acres in sections 4 and 9, township 48, range 15, and a part of Survey No. 2870, if either of these children die, the surviving ones to have it, and if all die, then my other heirs to have it.

"Fifth. I give unto Jim Saunders, Bob, Rachel, Francis and Laura Belle Williams, colored children, sons and daughters of Julia Williams, colored, the following tract of land lying in Cooper County, all my tract of land not given to Mary Sutton's children above named, being a part of sections 4 and 9, township 48, range 15, supposed to contain 115 acres, be the same more or less, said tract is a part of Survey No. 2870."

Nannie J. McBaine, named in the will, is the respondent Nannie J. Northcutt. Eva Pettus is the respondent Eva L. Eager. Fannie (or Frances) B. Connelly was the daughter of Nannie J. Northcutt by a former marriage. She died in childhood very soon after the death of the testator. Ida Pettus died without issue after the death of the testator. George, Burilla and Mary Sutton, named in the fourth paragraph of the will, were the only children of testator's deceased daughter Mary. Eight years after the death of the testator, George Sutton died without issue. Burilla Sutton married Wat Hickam and became the mother of appellants Willie Mae McAllister, Elizabeth L. Proctor and Frances D. Patterson (or Cochran). Burilla (Sutton) Hickam is now dead and died prior to the death of her sister Mary Sutton. Mary Sutton was of unsound mind at the time of the testator's death and was later placed under the guardianship of John L. Ballenger and died without issue about 1918. After the death of testator, William T. Sutton, the father of George Sutton, Burilla Sutton and Mary Sutton, married a second time, and the appellants Sutton are the fruit of this marriage. They claim as heirs of Mary Sutton. The devisees named in the will were the only living descendants of the testator and all survived him.

Mrs. Eager testified she was about eight years old at the time her grandfather died, and that she and her

now deceased twin sister Ida were living in his home; that he was quite old and had been sick about two months when a lawyer was sent for to draft his will; that testator could not sit up; that she had a belief and fear that her grandfather was about to die; that he seemed to think he was about to ''leave us;'' that she was not in the room when the will was written.

In 1900 Mary Sutton's guardian, Ballenger, began a partition suit against Burilla (Sutton) Hickam and her husband, to partition the 200-acre tract described in paragraph four of the will. George Sutton, as stated, had previously died without issue. The land was partitioned in kind, and the tract here involved was set off to Mary Sutton and the remainder to Burilla (Sutton) Hickam. Respondents were not parties to that suit. Burilla (Sutton) Hickam sold the tract set off to her to Sanford F. Conley. In 1904 (it is further stipulated) ''Sanford F. Conley, who was at that time owner of the land set off to Burilla Hickam in the partition suit'' just referred to, brought a suit against respondent Nannie J. Northcutt and her husband, respondent Eva Pettus (now Eager) and Mary Sutton, to try title to the lands set off to Burilla (Sutton) Hickam in the partition suit and determine the interest of the defendants therein. This suit was prosecuted to final judgment upon personal service. All defendants in that case except Mary Sutton made default. Ballenger, as guardian of Mary Sutton, filed an answer. The court adjudged that the defendants had no title or interest in the land under the will of Stephen D. Pettus. The pleadings, proceedings and judgments in these cases are in evidence.

The claims of respondents in this case are stated in their petition as follows:

''Plaintiffs further state that by the terms of said will said testator intended that said lands should remain in his family and descend to his heirs, so far as it was possible for him to so devise. Plaintiffs, however, state that said will properly construed so as to give effect to the testator's intention operates either:

"First, to create in said George, Burilla and Mary Sutton a life estate with survivorship, and a vested remainder in the other heirs of the testator upon the death of the survivor, or

"Second, to create a life estate in the said George, Burilla and Mary Sutton with survivorship contingent on the death of either without issue and with remainder over to the other heirs of the testator contingent on the death of the survivor without issue or

"Third, to create in said George, Burilla and Mary Sutton a fee conditional upon their having issue, and subject to be defeated upon their death without issue, with a limitation over on the death of any one of them without issue to the other heirs of the testator by way of executory devise."

The positions of appellants are: (1) that paragraph four of the will gave the 200 acres therein described to George, Burilla and Mary Sutton as tenants in common and that the "provisions in the will as to the disposition of the land in the event of their death referred to their death in the lifetime of the testator;" (2) that the suit to try, ascertain and determine title instituted and prosecuted to judgment by Conley in 1904, from which no appeal was taken, constitutes a bar to the rights respondents now assert.

I. When the testator came to make his will he had three groups of descendants to consider. One consisted of his daughter Nannie J. and her daughter Fannie or Frances; Ida and Eva, the twin daughters of William Pettus, deceased, the only son of testator, constituted the second; George, Burilla and Mary Sutton, the only children of testator's deceased daughter Mary formed the third. By the second paragraph of the will testator expressly gave his daughter Nannie J. a life estate in his bottom farm, with remainder to her daughter with a limitation over to his other heirs "if she" (the daughter) "should die without children." In the next paragraph he gives to Ebbe

*If Devisee Survives.*

(Eva) and Ida Pettus a $5,000 note, and adds: "if either of these children die, then the surviving to have all, and if both die to my other heirs." In the next paragraph he devises the 200 acres to George, Burilla and Mary and provides that "if either of these children die, the surviving ones to have it, and if all die then my other heirs to have it."

The intent of the testator is the thing to be sought, according to both the adjudged cases and the statute. Around the word "if" the controversy centers. This court has defined it heretofore. " 'If' may be a small word, but all know its meaning, and instead of a more formal phrase it is used in common language to express condition or limitation; and in giving it this meaning, I affirm every principle applicable to the construction of wills." [Robnett v. Ashlock, 49 Mo. l. c. 175.] It is clear that the office of the word is to introduce the idea of contingency. Since death is certain no such idea can survive if the clause in question is construed to mean that death of a devisee or devisees at any time is intended. Such a construction would eliminate all contingency, since death is certain. The only conclusion which will give a natural meaning to the word "if" as used in paragraph four is that the testator, in speaking of death in that paragraph, had in mind death of a devisee or devisees prior to his own death. This is not a new question in this State. In numerous decisions this court has so construed like expressions. In Dameron v. Lanyon, 234 Mo. l. c. 641, VALLIANT, J., expressed the rule thus:

"In the next section" (Underhill on Wills, sec. 342) "the same author says: 'Where there is an immediate gift in the will to A, and a disposition of the property to another, in case of his (A's) death, or in the event of his death, or with any similar expression referring to the death of A, not as an event which is certain to occur, but as a contingent event, no time being mentioned, the gift over will take effect only if A shall die during the lifetime of the testator. So, also, where the gifts are im-

mediate to several individuals, and in case of the death of any in the lifetime of the others, then over, those who survive the testator take at once absolutely.'

"The reason for the rule there stated is clear; the testator, in the case contemplated, provides for a remainder over on the occurrence of a contingency, but death is not a contingency, it is a certainty; therefore, in the case put, if the will were construed to mean that the remainder was to take effect on the death of A whensoever it might occur, A would take a life estate if he survived the testator and the remainder over would be a vested estate. Therefore, when the testator in his will refers to the death of the primary beneficiary in words that indicate that the event he has in mind is an uncertainty, he is presumed to mean a death occurring before some other event, and if there is nothing in the will to indicate what that other event is, the law presumes that the reference is to the contingency of the death of the primary beneficiary before that of the testator."

Subsequent decisions have re-affirmed the rule. This was done in Huntington Real Estate Co. v. Megaree, 280 Mo. 41, where the language construed was: "In case of death of either of my children the share of such deceased child shall be transferred to the heirs at law of such deceased child." The holding was that children who survived the testator took an absolute interest at his death. The authorities in and out of the State are collected and discussed and shown to support the rule. In Howard v. Howard, 184 S. W. 993, the language of the will was: "Should said Augustus die, then my will is that his share of my estate be legally divided amongst his heirs." Augustus survived the testator and was held to have taken the fee upon that event. The authorities are numerous and in accord. [Estate of Alexander, 149 Cal. 1. c. 150.]

II. It is argued that the rule just referred to cannot apply because the testator was very old and was ill and death seemed near at hand and the devisees were quite

young and strong; that testator could not have thought that one or more of these might predecease him. The language of the will is not am-biguous. Under the law as it was when this will was written and as it is now, the meaning ascribed to the word "if" and its associated words in a will like the one here is not one of two reasonable constructions which might be given the words. The reason the words are so construed is that it is the only meaning which can be given to them which will save the main idea, that of a contingency. So necessary is the construction that it is supported by a presumption, in the absence of other words which expressly or by implication indicate an intent to postpone the vesting until a time later than testator's death. [Underhill on Wills, sec. 861; Henderson v. Calhoun, 183 S. W. 584.] Extrinsic evidence is not admissible to explain this clause unless there is found something else in the will which makes its construction, in the light of the whole will, doubtful. [Roberts v. Crume, 173 Mo. 572; Calloway v. Calloway, 171 Ky. 366.] There is no such language in this will. In fact, it seems clearly to appear that the testator intended the meaning which the quoted rule gives his words. The draftsman was a lawyer. He knew and used apt words to give Nannie J. a life estate in certain lands in the second paragraph of the will. He also understood how to vest a remainder with an executory devise over to testator's other heirs, as the same paragraph shows. Further, in paragraph three, apt words are used to give an absolute interest in a $5000 note to Ida and Eva Pettus. In connection with this we have the same form of words as to survivorship and contingent bequest to testator's "other heirs" as is found in paragraph four, under construction. It is not claimed that Ida and Eva did not take an absolute interest in the note upon the death of their grandfather. That was what they did take and what it was clearly intended they should take; and yet, if respondents are right and the words in this third paragraph are given the interpretation which they contend

should be given identical words in the fourth paragraph, Ida and Eva took only an interest during their lives in the note. In addition, the devisees in paragraph two and three do not vest mere life estates. If respondents are correct in their construction of paragraph four, the three grandchildren named in it took a life estate only, and their children, thereafter born to them, would be cut off entirely except, perhaps, as they might be members of the class the will describes as testator's "other heirs;" for, if respondents are right, the interests of the devisees in paragraph four ended upon their deaths, in any event. It is argued that Sutton's second family of children are not of testator's blood and he could not have intended they should participate in his property. Their father's second marriage did not occur until after testator's death. It may not have been foreseen by testator. If it was, he is presumed to have known what the result of his will would be if Sutton had other children. If it was not, testator cannot be said to have had any particular intent which looked toward that eventuality. In either event, the will is to be interpreted as its plain language requires.

III.   It is suggested that the word "when" may be substituted or should be substituted for the word "if" in paragraph four. There is no obscurity in the will which will be relieved by such a substitution, and the substitution cannot be made upon the mere conjecture that testator may have meant something other than he said.

Substitution:
When for If.

[Eckle v. Ryland, 256 Mo. l. c. 449; Travers v. Reinhardt, 205 U. S. 423; 28 R. C. L. p. 225; 40 Cyc. pp. 1401, 1402; Graham v. Graham, 23 W. Va. 36.] In fact, the application of the rule stated in Paragraph I, supra, brings paragraph four into harmony with the rest of the will, as is suggested in Paragraph II, supra, and as appears from paragraph five in which the testator himself refers to the land given Julia Williams' children, as "all my tract of land *not given to Mary Sutton's children above named,*" i. e. in paragraph four of the will.

We hold that since George, Burilla and Mary Sutton survived the testator they took a fee as tenants in common upon his death; that, upon George's death thereafter without issue, Burilla and Mary inherited from him his interest; that the partition suit set off the eighty in question to Mary and upon her death it vested in her heirs. The judgment is reversed and the cause remanded with directions to enter judgment in accordance herewith. All concur.