HERMAN HUMPHREYS, VERNA HUMPHREYS, WILLIAM HUMPHREYS, LIZZIE RUSSEL, MINNIE BROWN, SALLY MOBERLY, PAULINE HUMPHREYS, EDYTH LEDERER, JOHN C. HUMPHREYS, LESTA EVANS, RUTH SHELTON, TRUMAN HUMPHREYS, LINDA RHODES, FRANCES VENCILL, MELBA HUMPHREYS, CLIFTON HUMPHREYS, DRURY H. HUMPHREYS, CLYDE E. HUMPHREYS, HARRY HUMPHREYS, JOAN HUMPHREYS, CLYDE E. HUMPHREYS, as Administrator of the Estate of JOHN A. HUMPHREYS, LOIS FORSON, MARY VIRGINIA CROOKSHANKS, and J. V. FORSON, as Administrator of the Estate of HELEN HENICKER, v. BESSIE WELLING, FERN HOFF, SHIRLEY NADINE MALONE and W. W. MALONE, Defendants, BESSIE WELLING and FERN HOFF, Appellants.—111 S. W. (2d) 123.

Division Two, December 17, 1937.

*P. M. Marr* and *A. D. Campbell* for appellants.

*L. E. Atherton* and *Fisher, Whitten & Keyes* for respondents.

BOHLING, C.—This action was instituted by the heirs (other than Fern Hoff) of Mary Ann Humphreys to quiet the title to certain real estate and cancel a deed from Fred Humphreys to Bessie Welling. Mary Ann Humphreys was the mother of James Humphreys, who was, in his lifetime, the husband of Bessie Humphreys, now Bessie Welling. James and Bessie Humphreys were the parents of Fred Humphreys and Fern Humphreys, now Fern Hoff. The controversy involves the third paragraph of the last will and testament of Mary Ann Humphreys and facts developing thereunder. Said paragraph reads:

"3rd. I hereby give, devise and bequeath unto my beloved grandson, Fred Humphreys, all the residue of my property, both real and personal and wherever situated, which said property, however, I give and bequeath to my beloved grandson, Fred Humphreys, in trust, and I hereby appoint my son, Charlie Humphreys, as trustee, which said property is to be held in trust by the said Charlie Humphreys as trustee for the said Fred Humphreys until my said grandson Fred is thirty (30) years of age. I hereby require and request that such trustee have control and possession and the rental of said real estate, using the same first to pay taxes thereon, and to keep the same in reasonable repair, and the remainder, after deducting a reasonable allowance for his time and trouble in so looking after said property, to be paid to my said grandson Fred, to be by him used and expended as he may see fit; and, if my said grandson, Fred Humphreys, after reaching twenty-five (25) years of age can show to the satisfaction of the then acting Probate Judge of Sullivan County, Missouri, that he is frugal, industrious and shows a disposition to take care of and manage said land in a prudent manner so as to not squander or waste the same, or any part thereof, then that the same shall be turned over by such trustee after so reaching twenty-five (25) years of age, and after so satisfying such probate judge to him absolutely, otherwise to be managed by such trustee, as hereinbefore provided, until the said Fred shall reach the age of thirty (30) years, when the same shall be turned over to him absolutely.

"I further provide that the said Fred shall not have the power of alienation or disposing of said land or of selling or managing or in any way conveying the same until he shall reach the age of thirty (30) years, unless the same be turned over to him after reaching the age of twenty-five (25) years in which event he may then have

the full power of alienation and disposal. If the said Fred Humphreys shall die without children then the property hereinbefore devised and bequeathed to the said Fred Humphreys shall descend and go to my heirs and not to the heirs of the said Fred Humphreys.''

The will was executed on March 10, 1923. The testatrix was a widow. Fred Humphreys, born October 3, 1904, was then eighteen years of age. The testatrix died February 25, 1924, seized of the real estate in question, at the age of eighty-six years. On March 18, 1930, Fred Humphreys filed with E. S. McNealey, the then probate judge of Sullivan County, Missouri, an application seeking, under the terms of the will, to have the land "turned over;'' but no action was ever had "turning'' said land over to him. On February 2, 1933, Fred Humphreys executed and delivered to his mother, Bessie Welling, a general warranty deed conveying the real estate to her. Fred Humphreys died March 31, 1933, intestate, unmarried, childless, and before attaining the age of thirty years.

· Bessie Welling and Fern Hoff jointly prosecute this appeal from the judgment decreeing title in the heirs of Mary Ann Humphreys and canceling the deed from Fred Humphreys to Bessie Welling. They present no issue as to any conflicting interests between themselves.

· The major contentions of the litigants revolve around the estates created by the will. Respondents contend the heirs of testatrix are executory devisees and, upon the happening of the event upon which their estate was contingent, they became vested with the fee. Appellants contend the land passed to Fred; that the attempted executory devise to said heirs was ineffective or void, and, therefore, respondents have no interest therein.

■ The devise of lands was recognized by statutory enactment in Missouri as early as 1807 [1 Mo. Ter. Laws, p. 131, sec. 18; see, also, 1 Mo. Ter. Laws, p. 405, sec. 25; Secs. 517, 518, R. S. 1929, Mo. Stat. Ann., pp. 309, 311]. In 1815 a statute enjoined the courts to give "due regard to the directions of the will, and the true intent and meaning of the testator'' [1 Mo. Ter. Laws, p. 411, sec. 49; see Sec. 567, R. S. 1929, Mo. Stat. Ann., p. 344] and Grace v. Perry (Banc), 197 Mo. 550, 559(I), 95 S. W. 875, 877(I), aptly states: ''The controlling rule in construing wills in this State, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention, the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of

it, and to this end, if need be, words may be supplied and omitted, and sentences transposed." [See, also Burrier v. Jones (Banc), 338 Mo. 679, 684(1), 92 S. W. (2d) 885, 887(3, 4); Carter v. Boone County Trust Company (Banc), 338 Mo. 629, 642 (1), 92 S. W. (2d) 647, 651(1-4); Selleck v. Hawley, 331 Mo. 1038, 1052(2) 56 S. W. (2d) 387, 393(3, 4).]

 The first clause of the third paragraph of testatrix's will, taken alone, gave Fred Humphreys the fee simple title but testatrix immediately, within the sentence, conditioned said devise as follows: "which said property, however, I give and bequeath to my beloved grandson, Fred Humphreys, in trust, and I hereby appoint my son, Charlie Humphreys, as trustee, which said property is to be held in trust by the said Charlie Humphreys as trustee for said Fred Humphreys until my said grandson Fred is thirty (30) years of age." In construing the will we are mindful of the thought of the testatrix manifested throughout of events to occur upon Fred attaining the age of thirty or making the required showing to the probate judge. The first sentence, considered as a whole, contemplates the termination of the trust and the merger of the beneficial and legal interest in Fred upon his attaining the age of thirty. Under it the land was to be held in trust by Charlie Humphreys, as trustee, for Fred Humphreys. That the legal title was in Charlie and not in Fred until the termination of the trust becomes apparent as we pursue the will.

The will specifically required the trustee, Charlie, to take over the control, the possession, and the rental of the land. He is required to apply the rental to the payment of the taxes, the maintenance of the property, a reasonable compensation for his services, and the payment of the remainder to Fred. Mentioning these duties of the trustee, appellants rely upon Stephens v. Moore, 298 Mo. 215, 228(2), 249 S. W. 601, 604(4), and say testatrix merely vested Charlie with the powers of an agent for Fred. The Stephens case involved a conveyance by the grantor in trust for "the sole use and benefit" of the grantor, with certain designated powers in said trustee relating to the control, supervision and management of the estate, and a provision for the termination of the trust upon the death of the grantor; the estate then to pass to said grantor's legal heirs, or as may be directed by grantor's will. The court, considering the instrument as a whole, stated "the grantor had no thought of making a disposition of his estate to take effect at his death," and concluded that the grantor "is the sole beneficiary under the trust, and that no other person has any interest in the trust estate, contingent or other" [l. c. 227, 604, respectively], and that the powers conferred upon the trustee constituted him an agent and were subject to revocation "as the grant was not coupled with an interest nor supported by an independent consideration." The facts of the Stephens

case and the wording and evident purpose of the instrument there involved distinguish it from the instant case; as, also, is the instant case to be distinguished from O'Day v. O'Day, 193 Mo. 62, 94, 91 S. W. 921, 929, also cited by appellants.

Testatrix next made provision for "turning over" the land if Fred, after reaching twenty-five years of age, show to the satisfaction of the then probate judge that he was frugal *et cetera.* We say this because testatrix specifically provided that upon such showing the same "shall be turned over by such trustee . . . to him absolutely." We do not hold that the will required any action on the part of the trustee to merge the beneficial or equitable and legal interests in Fred; but Fred evidently so construed the will for his petition to the probate court prayed ". . . and that the trustee be authorized and empowered to turn said land over to his petitioner." If such showing be not made she again expressed her will that it be "turned over to him absolutely" upon his attaining the age of thirty. Upon like conditions she withheld from Fred the power of alienation, disposition, sale, management "or in any way conveying the same." This necessarily included reference to the land. Considering the whole of the paragraph the only alienable property passing to Fred prior to the happening of one or the other of the events therein mentioned was the income remaining from the rentals after the payment of taxes, maintenance and compensation to the trustee, which income was "to be by him [Fred] used and expended as he may see fit."

The will evidences testatrix's solicitude for her beneficiary's material welfare and for a certain time a desire to safeguard against his possible inexperience in the ownership of the land. Testatrix's will deprived Fred of the control, possession, rental, management, power of alienation, disposition, sale and conveyance of the land, and we find him rather thoroughly stripped of the incidents of a fee simple title for the duration of the trust. This, certainly, was inconsistent with the legal-fee simple title. Testatrix, not Fred, appointed Charlie trustee, prescribed his powers and duties and required their discharge independent and irrespective of any desire or directions of Fred. Testatrix created an active, not a dry, trust. Charlie was not a mere depositary of the legal title. He was not an agent acting for and responsible to Fred. We think it inescapable that testatrix intended to and did vest the legal title in Charlie [see the construction placed on the instruments involved in: Matthews v. Van Cleve, 282 Mo. 19, 25, 35, 221 S. W. 34, 35, 38; Simpson v. Erisner, 155 Mo. 157, 162(II), 55 S. W. 1029(2); Garland v. Smith, 164 Mo. 1, 10, 13(I), 64 S. W. 188, 189, 190; Cross v. Hoch, 149 Mo. 325, 335, 340, 50 S. W. 786, 788, 789; McPike v. McPike (Mo.), 181 S. W. 2, 4(1); Jones v. Jones, 223 Mo. 424, 441, 123 S. W. 29,

1206

34, 25 L. R. A. (N. S.) 424, 432; Union Trs. Co. v. Curby, 255 Mo. 393, 413, 164 S. W. 485, 490] with an equitable beneficial interest in Fred, and provided for the merger of said equitable beneficial interest and the legal interest in Fred upon his making the required showing to the probate judge or attaining the age of thirty [consult Jarboe v. Hey, 122 Mo. 341, 350(II), 353(IV), 26 S. W. 968, 970(2), 971(4); Krause v. Jeannette Inv. Co., 333 Mo. 509, 516-7, 62 S. W. (2d) 890, 894(3); Union Trs. Co. v. Curby, 255 Mo. 393, 419, 164 S. W. 485, 491-2; Dwyer v. St. Louis U. Trs. Co., 286 Mo. 481, 486(II), 228 S. W. 1068(1); Anchor R. & I. Co. v. Becker, 3 Fed. Supp. 22(2)].

█ As hereinbefore indicated, after arriving at the age of twenty-five years Fred Humphreys filed with E. S. McNealey, probate judge, a written application praying "that the trustee be authorized and empowered to turn over this land to this petitioner." Mr. McNealey set the petition down for hearing. No hearing was ever had. It appears from Mr. McNealey's testimony that he desired to hear witnesses on Fred's ability before reaching any decision; and that he never acted upon the prayer of Fred's petition, although with what "little acquaintance" he had with Fred he had an opinion Fred was capable. The steps taken did not meet the conditions testatrix imposed upon Fred for turning the land over to him between the ages of twenty-five and thirty years; i. e., a showing by Fred to the satisfaction of the then probate judge that he was frugal, industrious and capable of managing the land "in a prudent manner so as not to squander or waste the same, or any part thereof. . . ." Fred died before he attained the age of thirty. The trust created by the testatrix never terminated during the lifetime of Fred, and, giving consideration to all the provisions of the will, the legal title never vested in him.

█ Appellants say the executory devise to the heirs of Mary Ann Humphreys was invalid. The position assumes Fred had the legal title in fee with the added power of alienation; and, therefore, the executory devise, being repugnant to the estate granted to Fred, was invalid. We have pointed out the will provided for the legal title in Charlie Humphreys, as trustee, with an equitable beneficial interest in Fred during the duration of the trust, and for the merger of the equitable beneficial interest and legal title in Fred upon the happening of one of the contingencies terminating the trust. An executory devise may follow a fee and may be contingent on the event which is to determine the fee. [Deacon v. St. Louis U. Trs. Co., 271 Mo. 669, 691(IV), 197 S. W. 261, 266(9); Sullivan v. Garesche, 229 Mo. 496, 509, 129 S. W. 949, 953. Consult 21 C. J., p. 1024, sec. 206, p. 1023, sec. 200; 69 C. J., p. 584, secs. 1662-1668; 2 Blackstone, 173; 1 Fearn on Remainders (1845 Ed.), p. 381.] The

position that Fred had the added power of alienation is on the theory testatrix by expressly denying Fred the power of alienation during the pendency of the trust impliedly recognized his power of alienation as of the date of her death and only restricted its use prior to the termination of the trust. Alienation is an incident to a fee simple title. Testatrix expressly withheld this incident of title and we think, under the facts, the argument involves a *non sequitur*. Under appellants stated position, the power of alienation incident to the estate had the trust terminated, as well as any power of alienation impliedly recognized prior to termination, would not have extended beyond the estate devised; which estate, if defeasible, would have remained subject to defeat. In Hull v. Calvert (Banc 1920), 286 Mo. 163, 170(I, II), 226 S. W. 553, 555(2-4), which involved a direct and immediate devise in fee, we held the power of alienation incident to a fee was not of such repugnancy as to defeat an executory devise over upon the defeasance of the fee of the original taker.

Appellants refer us to Wead v. Gray (1883), 78 Mo. 59, 60, Cornwell v. Wulff (Banc 1899), 148 Mo. 542, 50 S. W. 439; Roth v. Rauschenbush (Div. 2 1903), 173 Mo. 582, 73 S. W. 664, 61 L. R. A. 455; Gannon v. Albright (Banc 1904), 183 Mo. 238, 81 S. W. 1162, 67 L. R. A. 97, 107 Am. St. Rep. 471; Gannon v. Pauk (Banc 1906), 200 Mo. 75, 98 S. W. 471. Of these briefly. They do not exhaust the Missouri cases on the law advanced by appellants.

In the Wead case A bequeathed property to B, who was given full power of disposal as absolute owner, with a gift over to C in the event B fail to dispose of said property and die leaving no children or descendants. B, by last will and testament, disposed of the property. It would appear that the gift over to C was defeated by the will of B, but the court considered the limitation over to C void as an executory devise by reason of the power of disposal in B.

Gannon v. Albright and Gannon v. Pauk involved the same provision of a testator's will. A father devised certain real estate to his two sons, Michael J. Gannon, Jr., and Joseph E. Gannon, and in so far as involved, conditioned said devise as follows: "It is my will that the same shall not be sold, at least not before the younger of the two . . . becomes of lawful age; and should either of them die without issue, then the survivor, his heirs and assigns to take . . ." (183 Mo. l. c. 247, 200 Mo. l. c. 79). Each son executed conveyances of the devised land and each died leaving children. The court considered an added power of alienation, expressed or implied, to original devisees of the fee defeated an executory devise over (183 Mo. l. c. 251, 200 Mo. l. c. 91) ; but in summing up its conclusions, in part, on the Albright appeal, said: ". . . That by the said fourth clause of the will the said two sons took a fee simple subject to be defeated upon their dying without issue living at their death, and as

both died leaving children . . . their estate in fee became absolute . . ." (183 Mo. l. c. 264), which was also the conclusion adopted by the court on the Pauk appeal (200 Mo. l. c. 95, 96). It is to be noted the court's determination of the Pauk appeal rested upon subdivision II of said opinion (200 Mo. l. c. 96)—a defeasible fee in the original devisees not defeated—the first part of the opinion—added power of alienation defeating the executory devise—failed to receive a carrying vote.

We understand the Cornwell case was overruled by Walton v. Drumtra (Banc 1899), 152 Mo. 489, 508, 509, 54 S. W. 233, 240; at least four of the judges (including one of the judges concurring in the Cornwell case) so considered it. The Roth case was ruled by two of the judges of Division No. 2. Each had concurred in the Cornwell decision and, while concurring in the ruling of the Walton case, dissented from the majority in holding the Walton case overruled the Cornwell case. Gibson v. Gibson (Div. 2, 1912), 239 Mo. 490, 505, 144 S. W. 770, 775, reviews a number of the earlier decisions and states of the Roth case: ". . . This division assumed the responsibility of overruling, in effect, the decision of the full court in Walton v. Drumtra."

A discussion of Missouri cases may be found in 11 Missouri University Law Bulletin 1, 37. See also Gray's Restraints on Alienation (2 Ed.), secs. 57-74g. We do not undertake to exhaust the authorities.

Appellants also contend the provision "if the said Fred Humphreys shall die without children" refers to the death of Fred prior to the death of testatrix, and since Fred survived testatrix, he took the fee. Respondents stress their contention that said clause refers to the death of Fred without children, prior to any contingency vesting the legal estate in Fred; and also present the position, but deem it not essential to their case under the facts, that the clause refers to the death of Fred without children at any time, prior or subsequent to the death of testatrix or said contingency.

Wills are ambulatory until the death of the testator and, hence, are said to speak from death. Rules governing the lapse of gifts to beneficiaries in the event the beneficiary predecease the testator obtain in this State [State ex rel. v. Knight, 338 Mo. 584, 587(2), 92 S. W. (2d) 610, 611(2)]. From this it would appear logical to indulge a presumption that a testator is not ordinarily contemplating the event of the object of his bounty predeceasing him. Of course wills provide for the disposition of property after death; but the paragraph before us, considered as a whole, also evidences testatrix's intention to provide for the disposition of her property as of definite times with respect to the lifetime of Fred, towit, at least up to the termination of the trust estate, which might occur soon after Fred

attained the age of twenty-five. There would exist no logical basis for testatrix's creation of the trust estate, for her termination of the trust estate upon Fred, after attaining the age of twenty-five and before reaching thirty, making a satisfactory showing to the probate judge or for its termination in any event upon Fred attaining thirty, or for her withholding from Fred the power of alienation, *et cetera,* until the termination of said trust estate as aforesaid unless she had the thought in mind of her death prior to Fred attaining twenty-five when she inserted these provisions. The litigants present the case upon the theory of an executory devise to respondents. Respondents' executory devise, if ever effective, was *in futuro.* It is to be contrasted with a vested interest. Testatrix's will contemplated her death prior to Fred attaining twenty-five and his living until he reached thirty. The condition of the executory devise is Fred's death without children. The provisions of this will preclude the construction urged by appellants.

Appellants stress the cases of Owens v. Men & Millions Movement (1922), 296 Mo. 110, 118, 246 S. W. 172, 174(1); Northcutt v. McAllister (1923), 297 Mo. 475, 483(I), 249 S. W. 398, 400(1); Ewart v. Dalby (1928), 319 Mo. 108, 119, 5 S. W. (2d) 428, 432(5); Laird v. Lust (1936), 98 S. W. (2d) 768(1, 2).

The cases cited involved direct and immediate gifts to the beneficiaries. Appellants again do not exhaust the Missouri cases. They recognize the controlling effect of testator's intention, upon which we rule the instant case; and upon analysis we think practically all may be sustained under that rule of construction. The Northcut case discussed the condition "if either of these children die, the surviving ones to have it, and if all die then my other heirs to have it." This materially differs from a devise conditioned upon the death of the beneficiary "without children." In the former, the only contingency is the time of death—death being certain. The latter involves the contingency of the time of death, and, in addition, the contingency of death without children. The court stated [486, 401, respectively] that a devise to a daughter, "during her natural life," then to the daughter's daughter, "and if she die without children then to my other heirs" in the second paragraph of the will involved in the Northcutt case, gave, by apt words, a life estate, and a remainder "with an *executory* devise over to testator's other heirs. . . ." [Italics ours.] The case is not authority for appellants. When reviewed historically practically all, if not all, the later cases may be said to stress the Owens case. The condition involved in the Owens case was "should all die without leaving any issue" then over. It applied the paramount rule [119, 174(3) respectively]; but citing cases from foreign jurisdictions stated [118, 173(1) respectively] ". . . the words refer to a death without issue during the lifetime

of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple. The intention of the testator is presumed to be to prevent a lapse." And, holding now Section 3109, infra, inapplicable states [121, 175(4), respectively]: "This statute was enacted for the purpose of abrogating the early common-law rule under which the words 'die without leaving issue' were construed to mean an indefinite failure of issue;" citing Naylor v. Godman, infra, and Yocum v. Siler, infra.

Said Sec. 3109, Revised Statute 1909 (Mo. Stat. Ann., p. 1937), reads: "Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

Kent's Commentaries, Vol. 4 (14 Ed.) states: "If an executory devise be limited to take effect after a dying *without heirs,* or *without issue,* or *on failure of issue,* or *without leaving issue,* the limitation is held to be void, because the contingency is too remote, as it is not to take place until after an indefinite failure of issue. [p. *273] . . . The series of cases in the English law have been uniform, from the time of the Year Books down to the present day, in the recognition of the rule of law, that a devise in fee, with a remainder over if the devisee dies without issues or heirs of the body, is a fee cut down to an estate tail; and the limitation over is void, by way of executory devise, as being too remote, and founded on an indefinite failure of issue." [p. *276] That author mentioned statutory enactments similar to Section 3109, supra, and considered they finally settled the many conflicting opinions on this vexatious subject. [pp. 280, 281]. Viewed in the light of Kent's remarks, Section 3109 abrogated the common-law rule under which "dying without leaving issue" was construed to mean an indefinite failure of issue, resulting in defeating the intention of testators, to "issue living at the death of the person named as ancestor," giving effect, to that extent, to the words used by testators. Among the Missouri cases referring to said Section 3109, are:

In Faust's Admrx. v. Birner (1860), 30 Mo. 414, 417, the court, in construing a devise to testator's wife for life, remainder to her children, and if the wife die without issue, over to testator's brothers, said: "This is a good executory devise to the brothers. Our statute provides that the words 'dying without issue' shall not be construed to mean an indefinite failure of issue, but that they shall be construed to mean dying without issue living at the death of the first taker."

Yocum v. Siler (Banc 1901), 160 Mo. 281, 287, 295, 61 S. W. 208, 214, in construing a will giving certain lands to a son "with the ex-

press understanding and restriction, namely, that if my said son dies without legal issue, descendants of his, legitimate issue of his, said lands shall pass to Susan Evans . . ." and other named devisees, said: "So that, in 1854, when this will took effect, the statute of this State required the words 'dying without issue' to be construed as meaning 'heirs or issue living *at the time of the death of the person named* as ancestor.' "

We have hereinbefore set forth the condition involved in Gannon v. Albright (Banc 1904), supra, and Gannon v. Pauk (Banc 1906), supra.

In Gannon v. Albright, the court quoted from Chancellor Kent's Commentaries (183 Mo. 1. c. 258, 263), referred to above, stated how Section 3109, supra, applied to executory devises (183 Mo. 1. c. 262, 263), citing the Naylor and Yocum cases in support of that statement, and summed up its conclusions, in part, as follows: (183 Mo. 1. c. 264): ". . . That it [the will] does not create an estate tail by implication, because both by the language of the will and especially by the positive command of the statute of. 1845, the words 'die without issue' mean dying without issue living at the death of said Michael and Joseph, and therefore mean a definite failure of issue, . . . and, finally, that by said fourth clause of the will the said two sons took a fee simple subject to be defeated upon their dying without issue living at their death. . . ." Subdivision II of Gannon v. Pauk quotes said section (200 Mo. 1. c. 92) and concludes (1. c. 95) with language to like effect as that quoted above from Gannon v. Albright.

In Union Trust Co. v. Curby (Div. 1, 1914), 255 Mo. 393, 411, 412, 413, 164 S. W. 485, 489, 490, 491-2, a will created a trust estate, payable when the beneficiaries attained thirty-five years of age, with an estate over conditioned as follows: "Should anyone or more of them die without leaving issue then the share of such beneficiary shall go to those" entitled to the residuum of testator's estate. One of the beneficiaries surviving testator died testate before attaining thirty-five. The court, quoting now Section 3109, said (255 Mo. 1. c. 411): "This statute fits this clause of the will like a glove fits the hand; and, therefore, leaves no doubt but what the testator meant that if any one or more of his grandsons should die without issue before he or they reached the age of thirty-five years, then his share should revert to the residuary estate, and finally go to the residuary legatees." The court also found, upon construing the applicable provisions of the will as a whole, that the beneficiary acquired no interest in the trust funds prior to attaining the specified age; and upon his death, without issue, before attaining said age his share passed, not to his heirs or personal representatives or assigns but, to the testator's residuary legatees. [255 Mo. 1. c. 412, 413. See also the summing up 255 Mo. 1. c. 419.]

1212

Naylor v. Godman (1891), 109 Mo. 542, 550(II), 551(III), 19 S. W. 56, 58(2, 3), held the devise of a life estate, remainder in life tenant's children, but over upon death of life tenant "without issue," created a good executory devise; and that to say reference to the death of an immediate devisee in a will is always construed to mean death of the devisee prior to the death of the testator is stating the doctrine too broadly, such construction being indulged only *ex necessitate rei*.

The observations mentioned in the cases referred to were in the books when the Owens case was decided. They do not appear to harmonize with remarks in the cases cited by appellants. The issue involves.rules of construction, not public policy or a positive rule of law. In the instant case we find testatrix's intentions sufficiently manifested to permit of the construction of her will without recourse to subordinate aids for construction.

■ Appellants also plead the ten-year Statute of Limitations, Mary Ann Humphreys having died in February, 1924, and respondents having instituted this action in November, 1934. Aside from other reasons, Fred Humphreys in March, 1930, filed his sworn application, quoting from the applicable provisions of testatrix's will and praying that he be found "frugal, industrious," *et cetera*; and that "the trustee be authorized and empowered to turn said land over to this petitioner." Under his solemn oath, as late as 1930, Fred Humphreys was not holding the land adverse to the provisions of said will.

There was testimony that the trustee took charge of the land. He permitted Fred to have possession. The trustee died in August, 1925, and it appears that affirmative and active discharge of the duties of a trustee under the will were not thereafter undertaken by any one. We understand appellants do not contend that the provisions of testatrix's will were defeated by such events other than so far as is involved in issues hereinbefore ruled.

Testatrix's provisions against alienation operated to prevent Fred from disposing of whatever interest he had in the land until the will gave him the power of alienation—upon the termination of the trust. [See Bixby v. St. Louis Union Trs. Co., 323 Mo. 1014, 1029(II), 22 S. W. (2d) 813, 820(2, 3).] It follows that his deed of February 2, 1933, to his mother was ineffective as a conveyance of his interest to his mother and ineffective against the contingent executory devise to the heirs of Mary Ann Humphreys, which ripened into an estate in said executory devisees upon the death of Fred Humphreys without children on March 31, 1933.

The judgment is affirmed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur..