ELLIS CLAY BURNETT and GENE BURNETT, Adults, and MILDRED BURNETT, JAY BURNETT and DWIGHT H. BURNETT, minor children of H. H. BURNETT, acting by and through H. H. BURNETT, their natural and legal guardian, and CLAY STALLINGS, ZADA STALLINGS HAYNES, WESLEY STALLINGS and PAULINE STALLINGS HAYNES v. W. C. McHANEY, Executor under the last Will and Testament of J. J. BURNETT, BEN F. JONES, KATE BAUMBLATT, RUTH BAUMBLATT LANE, FRANK BAUMBLATT, EUGENE BAUMBLATT, PAUL BAUMBLATT, MARGUERITE BAUMBLATT and RUSSELL BAUMBLATT, Appellants.—148 S. W. (2d) 495.

Division Two, March 12, 1941.

*Langdon R. Jones* for Ben F. Jones.

*George Smith* and *A. W. Billings* for Baumblatt.

502

*Hal H. McHaney* for respondents.

WESTHUES, C.—This is a suit to try and determine title to property, both real and personal. From a judgment in plaintiffs' favor, defendants appealed. The whole controversy hinges on the construction of the last will and testament of John J. Burnett, deceased. The will in question was executed in the year 1924. At that time Marguerite Burnett, wife of the testator, was living. They had no children. The testator had one living brother, H. H. Burnett, also one living sister, Etta Stallings. Two brothers, S. H. Burnett

and Summers Burnett, were dead. S. H. left surviving him two daughters, Etta and Myrtle. Summers left surviving him a son, Clay. The wife of the testator had one sister, Kate Baumblatt. The testator died July 2, 1937, and his wife had predeceased him by three years. The plaintiffs in the case are the children of the testator's living brother, H. H. Burnett, and the children of his sister, Etta Stallings. They are Ellis Clay, Gene, Mildred, Jay and Dwight H. Burnett, children of H. H. Burnett, and Clay Stallings, Zada Stallings Haynes, Wesley Stallings and Pauline Stallings Haynes, children of Etta Stallings. The defendants are W. C. McHaney, Administrator of the estate of John J. Burnett, Ben F. Jones, Purchaser and Grantee of the Interest in the real property of Etta Stallings, H. H. Burnett, Etta Kelly nee Burnett, Myrtle Jacks nee Burnett and Clay Burnett as heirs or devisees under the will of John J. Burnett. The other defendants are the sister of the testator's wife, Kate Baumblatt, and her children, Ruth Lane, Frank, Paul, Eugene, Marguerite and Russell Baumblatt.

By the second clause of the will in question H. H. Burnett was given $5, in case of his death prior to the testator's death, to be paid to his heirs. The third clause gave the sum of $5 each to Etta Burnett and Myrtle Burnett, and in case of their death prior to the testator's death the sum was to be paid to their children, if any there be. By the fourth clause Clay Burnett was given $5. By clause five the testator bequeathed the sum of $1,000 to his sister, Etta Stallings, and if she be not living the sum to be paid to her children in equal shares. The sixth clause did not concern any party to this litigation. The seventh clause is the one that gave rise to this lawsuit. It is as follows:

" 'Article Seventh, All the rest, residue and remainder of my estate, real and personal, I will and bequeath to my beloved wife, Marguerite Burnett, during her natural life, with power and authority for her to mortgage or sell and convey, any part or all of said property she so desires during her natural life. Whatever remains undisposed of as above authorized, at the death of my beloved wife, either personal or real property, except my bank stock mentioned in the eighth article, I direct the same to be divided equally between the then living brothers, sisters, nieces and nephews of myself and wife, Marguerite.' "

In the eighth clause of the will the testator created a trust, consisting of fifteen shares of bank stock, for the benefit of Clay Burnett. This article concluded as follows:

"But if the said Clay Burnett dies before he becomes thirty-five (35) years of age and leaves no living child or children then I direct that the same may be distributed among the ones designated in article seven of this will and in the same proportion to each legatee."

This clause is not involved in this suit but the portion we have embodied herein, particularly the portion, "distributed among the ones designated in article seven," may be read to shed light on the meaning of clause seven. The bank stock mentioned was not in existence at the death of the testator, since he had disposed of it prior to his death. Briefly stated the contentions of the various parties are as follows:

It will be noticed that the plaintiffs consist of all the children of the living brother and sister of the testator. They insist that the testator intended to and did, by article seven, distribute the residuary estate in equal parts among all of the nieces, nephews, sisters and brothers of the testator and his wife, and there being twenty-one in number, each was to receive a 1/21st interest. The trial court agreed with that interpretation of the will. The Baumblatt family insists that the testator intended to divide his estate (except for the special bequests) into two equal parts, one-half to the Baumblatt family, as the nearest of kin of the testator's wife, and the other half to the testator's nearest of kin. Ben F. Jones, who purchased the interest of the living brother and sister, and the interest of the nieces and nephew, children of the deceased brothers of the testator, says that article seven of the will lapsed because the testator intended that article to be in effect only in case the testator's wife survived him, therefore, the property covered by article seven went by inheritance to the nearest of kin of the testator.

Appellant Jones also contends that if article seven is to be given effect, then the property covered thereby should go one-fifth to Mrs. Baumblatt, one-fifth each to the living brother and sister of the testator, one-fifth to Clay Burnett and one-tenth to each of the two daughters of the deceased brother of the testator. Appellant Jones insists that the testator intended, by article seven, to divide his property by the *per stirpes* rule and not *per capita*. Again, appellant Jones argues that if we apply the *per capita* rule the property should go share and share alike, a one-sixth interest, to the living brother and sister of the testator, Mrs. Baumblatt and the three children of the deceased brothers. Appellant Jones contends that if the will is taken as a whole it is evident that the testator did not have in mind the children of the living brother and sister and the children of Mrs. Baumblatt, sister of the testator's wife.

Many rules have been engrafted upon the law governing the construction and interpretation of wills. A cardinal rule which takes precedence over all others is, that the intention of the testator, as gathered from the will itself, must control, unless it is contrary to law or public policy. [Humphreys v. Welling, 341 Mo. 1198, 111 S. W. (2d) 123, l. c. 125 (1, 2), and cases there cited. Also 69 C. J. 67, section 1122.]

Keeping that in mind let us consider the various contentions of the parties to this lawsuit. First, that of the Baumblatts, that the testator intended, by article seven, to divide his estate into two equal parts, one-half to go to his own and the other to his wife's relations. A number of cases are cited in support of this contention. We will refer to a few. In In re Ihrie's Estate, 29 Atl. 750, the will read as follows: " 'The residue of my estate is to be divided between my husband's grandchildren and the children of Ferdinand Poree.' " In Young's Appeal, 83 Pa. St. 59, the will read: " '. . . such moneys or property as she may possess be equally divided between her relations and mine, . . .' " And in another case, Godfrey v. Epple (Ohio), 126 N. E. 886, 11 A. L. R. 317, the bequest read: "Equally divide between my and my wife's nearest kin." The court in each case held that the testator intended to divide his property into two equal parts. Section W, 16 A. L. R. 145, is also cited. It is there said: "Where a bequest is to the 'relatives,' 'heirs,' or 'next of kin' of the testator and of the testator's husband or wife, the courts evidently prefer a construction which will make two classes of the beneficiaries rather than one."

The clause of the will in each of the above three cases is somewhat different to the language of the testator in the will before us, and the rule referred to in 16 A. L. R. is not applicable unless the language of the will is ambiguous. Much stress is laid upon the use of the word "between" in article seven. It is argued that the testator had in mind two classes and, therefore, employed the word "between" rather than "among." However, in clause eight, the testator, when he referred to the beneficiaries under clause seven, used the word "among," indicating that the words were used interchangeably. Therefore, we are not aided in construing clause seven because of the word "between." We do not think that the testator, by clause seven, meant to give one-half of the property to the Baumblatt family and the other half to his own relations. The testator's wife had only one sister, no brothers. The testator had one sister and three brothers. In the will he referred to them collectively as brothers and sisters of himself and wife, placing them, we think, in one class and intending to treat all on the same footing. We, therefore, rule the point against appellants, the Baumblatts.

Let us direct our attention to the three contentions made by appellant Jones: First, that the testator died intestate as to all of his property except the specific legacies. Where there is a will there is a presumption against partial intestacy. This rule is not disputed so we need not cite authorities to support it. Appellant Jones states in his brief, in commenting on an opinion by this court, as follows:

"This Court had before it the construction of a will based on a contingency, the case of Crowson v. Crowson, 19 S. W. (2d) 634. This case recognized the presumption against partial intestacy, but

properly laid down the rule that that presumption is of no avail where the testator by plain and unequivocal language shows a contrary intention.''

▮ We have no fault to find with that interpretation of the law. In the case before us the testator lived a number of years after the death of his wife. He did not see fit to change his will. That, together with the presumption against partial intestacy, is a strong argument against appellant Jones' contention. In addition to that, the language of clause seven does not indicate that the testator intended it to be inoperative in case his wife predeceased him. Many wills are written which provide a life estate to the wife, or some other person, with remainder over to certain named legatees. That is a common practice. Unless a will provides in specific terms that such provisions shall not be operative in case the wife or life tenant dies before the testator, the remaindermen take upon the death of the testator, because the event upon which their fee was to vest has occurred. This has been the rule from the early English cases to the present time. [See 69 C. J., page 1054, Section 2260 and page 1058, Section 2273, note 30.] Section 2260 reads as follows:

''Where a will gives a life estate with remainder in fee and the life tenant dies before the testator, such death affects merely the interests of the life tenant, and has the effect of accelerating the remainder.''

The case of Crowson v. Crowson, 323 Mo. 633, 19 S. W. (2d) 634, cited by appellant Jones, is authority against his contention. It is there ruled, 19 S. W. (2d) 1. c. 637, [3, 4] ''The presumption against partial intestacy is of no avail, where the plain and unequivocal language of the testator shows a contrary intention.'' In the case before us no such intention was expressed in the will. To arrive at such an intention we would be compelled to interpolate words not in the will. The point is ruled against appellant Jones.

Appellant Jones says that if we should hold clause seven to be in effect and hold against him on his contention for the *per stirpes* rule, then under the *per capita* rule the distribution should be limited to the brother and sister of the testator, the sister of the testator's wife and the three children of the deceased brothers of the testator. Here again we would be compelled to read words into the will to give it that effect. The words ''nieces and nephews of myself and wife'' would have to be curtailed to mean the ''nieces and nephews, children of my deceased brothers.'' In this contention for the *per stirpes* rule appellant Jones argues that the clauses of the will preceding clause seven disclose that the testator had in mind his living brother and sister, including the sister of his wife and the children of his deceased brothers. Considering those clauses, as well as clauses seven and eight, it is evident that the testator desired to favor his wife, his sister and a nephew, Clay Burnett. He gave his sister a special bequest of $1,000. By clause seven he provided for his wife and

authorized her to use the entire estate if necessary for her support. In clause eight he made a special provision for his nephew, Clay Burnett. He gave to others who would inherit his estate, absent a will, the sum of $5 each. We cannot see the force of the argument that those provisions indicated that the testator desired to limit clause seven to the parties who would be his legal heirs. What we have said foreshadows the conclusion we have reached, that is, that the judgment of the trial court, construing the will as it did, must be sustained. To place that interpretation upon the will we need not restrict its terms, make interpolations, or remove words therefrom. We need only to distribute the estate as the testator directed to the "living brothers, sisters, nieces and nephews of myself and wife, Marguerite."

█ Appellants, the Baumblatts, assigned error to the action of the trial court in striking from the record evidence offered by them that the testator's wife materially aided him in accumulating the property, and, therefore, such evidence should be considered in construing the will so as to give one-half of the property to them. Even if the evidence were admissible (we do not say it was) it would not change the result. The testator left practically his entire estate at the disposal of his wife in case she survived him. He also placed her relations on the same footing with his own. After all, the will speaks for itself and extrinsic evidence is not admissible to change its terms. The rule is well stated in 69 C. J., page 62, section 1119, as follows: "If the intention is expressed in terms that are ambiguous, the court takes into consideration the situation of the testator and the circumstances surrounding him at the time he executed the will, but only as they explain its provisions, . . ."

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.